Argued July 25, reversed and remanded August 27, 1973

# STATE OF OREGON, *Respondent, v.* JEFFREY EDWARD FITZGERALD (No. 28921), *Appellant.*

513 P2d 817

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

Defendant was charged with attempted escape in the first degree, ORS 162.165,[①] ORS 161.405,[②] and assault in the first degree, ORS 163.185,[③] by the following indictment:

## "COUNT I

"The said Jeffrey Edward Fitzgerald, on or about the 24th day of June, 1972, in the County of Yamhill, State of Oregon, then and there being, and then and there acting jointly and cooperating with

---

[①] "Escape in the first degree. (1) A person commits the crime of escape in the first degree if:

"* * * * *

"(b) He uses or threatens to use a dangerous or deadly weapon escaping from custody or a correctional facility

"(2) Escape in the first degree is a Class B felony." ORS 162.165.

[②] " 'Attempt' described. (1) A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime.

"(2) An attempt is a:

"* * * * *

"(c) Class C felony if the offense attempted is a Class B felony." ORS 161.405.

[③] "Assault in the first degree. (1) A person commits the crime of assault in the first degree if he intentionally, knowingly or recklessly causes serious physical injury to another under circumstances manifesting extreme indifference to the value of human life.

"(2) Assault in the first degree is a Class B felony." ORS 163.185.

Gerald Bruce Cooley, did then and there unlawfully and knowingly attempt to escape from the Yamhill County Jail, a correctional facility, by the use of a dangerous weapon, to-wit: an iron bar, *by striking one Thomas Jerome Ring with said iron bar * * *.*

## "COUNT II

"As part of the same transaction as contained in Count I herein, the said Jeffrey Edward Fitzgerald, on or about the 24th day of June, 1972, in the County of Yamhill, State of Oregon, then and there being, did then and there unlawfully, intentionally, and knowingly aid and abet one Gerald Bruce Cooley to cause serious physical injury to Thomas Jerome Ring *by striking the said Thomas Jerome Ring on the head with an iron bar,* under circumstances manifesting extreme indifference to the value of human life * * *." (Emphasis supplied.)

A jury returned verdicts of guilty on both charges. The trial court then entered separate judgments of conviction and imposed separate concurrent sentences for each of the two charges.

Defendant's appeal raises the following issues: (I) As stated more fully below, the principal witness who connected defendant with the attempted escape and the assault was Ronald Keeland. Defendant contends that Keeland was an accomplice as a matter of law, that the jury should have been so instructed, and that based on ORS 136.550 the jury should have been further instructed that since Keeland was an accomplice, his testimony had to be corroborated in order to find defendant guilty; (II) As is apparent from the relevant statutes, nn 1-3, supra, and the italicized portions of the indictment, striking Mr. Ring with an iron bar was regarded as an element of both the attempted

escape and the assault. Defendant contends that his conduct and the conduct of his accomplice Cooley for which he is liable does not constitute *both* attempted escape in the *first degree* and assault in the first degree.

The state's evidence was that the Yamhill County Jail contains three individual cells in a maximum security area. On June 24, 1972, Bruce Cooley was incarcerated in the first cell, Ronald Keeland was in the second cell, and defendant was in the third cell. A set of bars separated the maximum security area from the rest of the jail; these bars could be reached from defendant's cell, but not from the other two.

Keeland testified that defendant smuggled a hacksaw blade into the jail; that Cooley and defendant planned an escape; that Cooley sawed one of the bars out of his individual cell; that defendant sawed one of the bars that separated the maximum security area from the rest of the jail; that Cooley left his cell through the hole he had created; that Cooley went through the hole defendant had created from the maximum security area into the main area of the jail; and that Cooley's and defendant's plan was that Cooley would attack a guard, obtain keys, return and open defendant's cell so they could both complete their escape.

Other witnesses testified that Cooley went through the two holes created by his and defendant's sawing into the main area of the jail and, using the pieces of iron bar that had been sawed out, attacked one of the guards, Mr. Ring.

Although Cooley beat Ring severely with the bars, Cooley never obtained keys necessary to complete the escape. About the time other officers arrived

to assist Ring, Cooley abandoned the escape attempt as hopeless.

The defendant in this case never got out of his own cell or participated in the attack on Ring. Instead, defendant was charged and tried on the theory that he was criminally liable for aiding and abetting Cooley in planning and committing the attempted escape and the assault. *See,* ORS 161.155.

## I

ORS 136.550 provides:

"A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission."

Relying on this statute, defendant requested the following instruction:

"* * * [T]he witness, Ronald J. Keeland, as a matter of law, aided and abetted in the commission of the crimes charged and is, therefore, an accomplice."

The trial court did not give defendant's requested instruction; instead, the court instructed the jury that whether Keeland was an accomplice or not was for it to decide.

The question of whether a state's witness is an accomplice is for the jury when different inferences can be drawn from the evidence; however, if the facts are not in dispute, the trial judge should rule on that question as a matter of law. *State v. Gowin,* 241 Or 544, 407 P2d 631 (1965); *State v. Carr,* 28 Or 389, 42 P 215 (1895).

There was no significant dispute as to the facts concerning Keeland's participation in the criminal episode. Keeland testified that he knew that Cooley and defendant were planning to escape for about a week before the actual attempt; that during this week he passed the hacksaw blade back and forth between Cooley and defendant so that they could saw the bars in order to escape; and that during this week he did not inform jail officials of the planned escape.

■ We have repeatedly held that a person is an accomplice for purposes of ORS 136.550 if he could be indicted and tried for the same criminal act for which the defendant is being tried. *State v. Polk,* 5 Or App 605, 485 P2d 1241 (1971); *State v. Winslow,* 3 Or App 140, 472 P2d 852 (1970); *State v. Folsom,* 1 Or App 404, 463 P2d 381 (1970). A provision in the Oregon Criminal Code of 1971 defines when such can occur:

"A person is criminally liable for the conduct of another person constituting a crime if:

"(1) He is made criminally liable by the statute defining the crime; or

"(2) With the intent to promote or facilitate the commission of the crime he:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort he is legally required to make." ORS 161.155.

■ Within the meaning of ORS 161.155 (2)(b), Keeland's act of passing the hacksaw blade back and forth between Cooley and defendant amounted to aiding and abetting the attempted escape, and its natural and

probable concomitant, assault on a guard. *See, State v. Gowin,* supra; *State v. Carr,* supra. Keeland testified he never intended to leave the jail with Cooley and defendant. This is irrelevant. The relevant inquiry is whether Keeland intended "to promote or facilitate" their crimes within the meaning of ORS 161.155 (2)(b). While there is no direct evidence on Keeland's mental state in this regard, the only inference that can be drawn from his acts in passing the saw blade back and forth is that he did intend to promote or facilitate the planned crimes.

The state suggests that Keeland is not an accomplice because his aid to Cooley and defendant was done under duress. Keeland's testimony regarding duress was as follows:

"Q [By the district attorney:] Mr. Keeland, are you afraid or have you been put in fear in any way by the defendant in this particular matter?

"A Yes.

"Q Have you, in fact, been threatened as a result of this particular event we're talking about today?

"A Cooley said that he had friends on the outside that could take care of me.

"Q This statement was made by Mr. Cooley?

"A Yes.

"Q Has the defendant Fitzgerald ever offered any threats to you as a result of this particular incident?

"A I'm not sure.

"Q Are you, in fact, afraid of Mr. Fitzgerald? Does he frighten you?

"A Some.

"* * * * *

"Q * * * And is that the reason that you allowed them to believe that you would go with them?

"A It is.

"* * * * *

"Q Why did you help them insofar as passing the blade back?

"A Because I'd already been injured once when I was in jail.

"Q Well, is what you are saying is that you were afraid not to?

"A Yes.

"Q And why were you afraid not to?

"A I almost lost an eye when I was in the jail.

"* * * * *

"Q * * * It was out of fear of some rephrisal [sic] that you participated in this and I used the word 'participate' in quotes, is that correct?

"A Yes.

"Q If you—if it had been up to you—if you'd been left to exercise your own free will on this thing, irrespective of anything else, would you have helped them?

"A No.

"* * * * *

"Q [By defense counsel:] But you did help them, didn't you?

"A Yes.

"Q And you sat there for eight days with these officers coming around everyday or every few hours and you never uttered a peep to anybody, did you?

"A You'd sit there for eight days, too, if you lost an eye.

"Q How's that?

"A You'd sit there eight days too, if you almost lost an eye over it.

"* * * * *

"Q [By the district attorney:] Any access between your cell and Fitzgerald's cell or Cooley's cell?

"A No, except—

"Q The bars are open, though, is that correct?

"A Yes.

"Q How close are the cells together?

"A Just a steel wall in between.

"Q Right next to each other, is that correct?

"A Yes.

"Q Can you see from one cell to the other?

"A If you have a mirror.

"* * * * *

"Q [By defense counsel:] There's no way a man in the drunk cell can even touch you, is there? No way. Isn't that right?

"A Depends on how close you are to the bars.

"Q Well, if you stood right up there and let him grab you, I suppose you could, but, normally, there's no way he can touch you, is there? Isn't that right?

"A Yes."

The defense of duress is defined by statute as follows:

"The commission of acts which would otherwise constitute an offense, other than murder, is not criminal if the actor engaged in the proscribed conduct because he was coerced to do so by the use or threatened use of unlawful physical force upon him or a third person, which force or threatened force was of such nature or degree to overcome earnest resistance." ORS 161.270 (1).

When ORS 161.270 was proposed as part of the Oregon Criminal Code of 1971, the Criminal Law Revision Commission explained it was "basically * * * a codification of the doctrines announced in" *State v. Weston*,

109 Or 19, 219 P 180 (1923), *State v. Patterson,* 117 Or 153, 241 P 977 (1926), and *State v. Ellis,* 232 Or 70, 374 P2d 461 (1962). Proposed Oregon Criminal Code, p 33. In *Weston,* the court stated:

> "Even in the commission of crimes that may be excused on account of threats or menace sufficient to show that they had reasonable cause to, and did, believe their lives would be endangered if they refused, such danger must be, not one of future violence, but of present, impending and imminent violence at the time of the commission of the crime * * *." 109 Or at 34.

In *Patterson* and *Ellis,* the court quoted with approval the following from 16 CJ 91:

> "An act which would otherwise constitute a crime may also be excused on the ground that it was done under compulsion or duress. The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough * * *." 117 Or at 155-56; 232 Or at 85-6.

■ In this case, as we understand Keeland's sketchy testimony about having previously been injured in the jail, he was not claiming that this was an actual use of force by Cooley or defendant to coerce him into cooperation. Keeland's only testimony about the "threatened use of unlawful physical force upon him * * * of such nature or degree to overcome [his] earnest resistance," ORS 161.270 (1), was his statement that "Cooley said that he had friends on the outside that could take care of me." In light of the above-stated legislative history of ORS 161.270 this fairly vague threat of future injury was insufficient to excuse Keeland's participation on the grounds of duress.

■ In summary, we hold: (1) the undisputed facts concerning Keeland's acts of assistance to Cooley and defendant plus the only possible inference that can be drawn concerning Keeland's accompanying mental state would render Keeland liable, under ORS 161.155 (2)(b), for prosecution for Cooley's and defendant's acts; (2) therefore, Keeland was an accomplice within the meaning of ORS 136.550; and (3) therefore, the jury should have been instructed that Keeland was, as a matter of law, an accomplice and the jury could not convict defendant unless Keeland's testimony was corroborated by other evidence.

■ Defendant also moved for a judgment of acquittal on the grounds that Keeland was an accomplice as a matter of law. We do not hold this motion should have been granted. Even though we have concluded Keeland was an accomplice, this does not per se result in acquittal. ORS 136.550 only requires that the jury determine whether Keeland's testimony was corroborated. There appears to be evidence in the record that the jury, if it chose to do so, could regard as corroborating Keeland's testimony. For example, as we understand diagrams and photographs introduced into evidence, a jury could reasonably infer from those exhibits that nobody other than the present defendant could have sawed the second hole through which Cooley went just before attacking Ring. This physical evidence, albeit circumstantial, would corroborate Keeland's testimony that the present defendant did, in fact, saw the second hole through which Cooley went. That question, however, is one for a jury, not for us.

## II

Since this case will have to be tried again, we turn to defendant's second contention—that his conduct

did not constitute both attempted escape in the first degree and assault in the first degree, because under the relevant statutes, nn 1-3, supra, and the indictment, the act of striking Mr. Ring was an element of both crimes.

■ The legislature can provide, and in many situations has, provided that a person's conduct will be a violation of more than one criminal statute. *State v. Welch,* 264 Or 388, 505 P2d 910 (1973). Whether defendant's conduct in this case constituted both attempted first degree escape and first degree assault raises the question of what was the legislature's intent in enacting the relevant statutes. *State v. Welch,* supra; *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971).

■ For the reasons set forth below, we conclude that the legislature intended that defendant's conduct could be prosecuted as *some degree* of attempted escape and, separately, first degree assault, but did not intend that defendant's conduct could be prosecuted as both attempted *first degree* escape and first degree assault.

In adopting the Oregon Criminal Code of 1971, the legislature created three degrees of the crime of escape. The least serious degree, third degree, consists simply of escape from custody and is a Class A misdemeanor. ORS 162.145. The next most serious degree, second degree, includes the "use [of] physical force escaping," escapes by convicted felons, and escapes from correctional facilities, and is a Class C felony. ORS 162.155. The most serious degree, first degree, includes, as noted above, the use of a dangerous or deadly weapon while escaping, and is a Class B felony. ORS 162.165. The Criminal Law Revision Commission's Commentary to these provisions explains:

"The proposed grading scheme takes as its

basic rationale the *risk to others* created by the escape. The least risk is presented by persons charged with a misdemeanor or felony who escape from custody prior to incarceration and without resort to force or a deadly weapon. Factors that raise the offense to second degree escape represent additional risk-producing elements:

"* * * * *

"(3) The use of force in escapes obviously increases the hazards imposed on those obligated to resist such conduct.

"* * * * *

"* * * The use of force or violence in effecting an escape will be punishable under first and second degree escape * * *." Proposed Oregon Criminal Code, pp 194-95.[4]

It is apparent the legislature considered the possibility of harm to others, e.g., an assault, occurring during an escape. Indeed, the primary factor that distinguishes the more serious escape offenses from the less serious is the extent of the risk of harm to others. This is the basis of the enhanced penalty for first degree escape.

There is no indication that the legislature intended that a person assaulting a jailer during an escape could be sentenced for both the assault and the most aggravated degree of escape. Assaults on jailers were not intended per se to be treated more seriously than assaults on members of the public.

"The draft does not treat separately assaults against particular classes of persons such as government officials or public officers since such per-

---

[4] What the Criminal Law Revision Commission and the legislature may have overlooked is that "risk to others created by the escape" might well have been adequately dealt with by other criminal statutes, for example, all of the statutes that define offenses against persons, ORS ch 163—most specifically, the assault statutes.

sons should be adequately protected by the general provisions." Proposed Oregon Criminal Code, p 94.

We conclude that the legislature did not intend that in a situation like the facts of this case separate convictions and sentences could be imposed for *both* attempted *first degree* escape and first degree assault. In *State v. Woolard,* supra, the Supreme Court concluded it was inappropriate to sentence for both larceny and burglary because the legislature had taken the crime of larceny into consideration in setting the penalty for burglary. Likewise, in this case, the legislature has taken the crime of assault into consideration in setting the penalty for *first degree* escape.

On the other hand, we discern from the statutory scheme a legislative intent to allow the state to treat an assault upon a jailer in the course of an escape more seriously than an assault which is not part of a plan to escape, and more seriously than an escape which does not include the use of force. Assault in the first degree and escape in the first degree carry the same maximum penalty. We do not think the legislature intended to require that the state, in effect, waive separate prosecution for escape in cases where the use of force accompanies an escape.

■ Escape in the second degree includes "escape from a correctional facility," ORS 162.155 (1)(c), which is defined as "any place used for the confinement of persons charged with or convicted of a crime," ORS 162.135 (2). A jury would be entitled to conclude that the Yamhill County Jail is a correctional facility within this definition. Escape in the second degree is a Class C felony. ORS 162.155 (2). Attempted escape in the second degree is a Class A misdemeanor. ORS 161.405 (2)(d).

Our analysis of the entire statutory scheme leads us to the conclusion that the prosecution has the following alternatives on the facts at bar. First, the prosecution could charge the defendant with either attempted first degree escape or first degree assault, but not both. Second, the prosecution could charge attempted first degree escape and first degree assault *as alternative counts. State v. Welch,* supra. Third, the prosecution could charge attempted escape in the second degree, i.e., "from a correctional facility," ORS 162.155 (1)(c), and assault in the first degree. The jury, depending upon its assessment of the evidence, could return guilty verdicts on one count or the other, or both. In the latter event separate sentences could be imposed.

Reversed and remanded for further proceedings in accordance with this opinion, which further proceedings must necessarily include resubmission to the grand jury if the state elects to proceed under the second or third alternatives set forth above.