Argued December 21, 1977, reversed and remanded for a new trial May 8, 1978.

STATE OF OREGON, *Respondent,*

*v.*

JOHN STEPHEN GIRARD, *Appellant.*

(No. 89831, CA 8341, No. 89832, CA 8342)

(Cases consolidated)

578 P2d 415

See also, 25 Or App 169, 548 P2d 505; 276 Or 511, 555 P2d 445.

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

THORNTON, J.

**THORNTON, J.**

Defendant was convicted by a jury of first degree burglary, first degree escape and second degree assault.[1] He appeals, making several assignments of error.

Defendant was suspected of possible involvement in a residential burglary. Officers Congdon and Bradshaw of the Clackamas County Sheriff's Department went to the house where defendant was staying and attempted to talk to him. The officers knocked on the door, defendant answered, and the officers identified themselves. The officers asked permission to enter the house and defendant replied the house was not his; a female, later identified as Catherine Clancy, appeared at the door and said the officers could not enter the house. The officers also asked if they could search the house and were told they could not.

The officers then proceeded to stake out the house, and while doing so they saw defendant sneak across the backyard of the house carrying a box. When he saw the officers, defendant returned to the house. The officers searched the backyard and discovered items they suspected of being taken in the burglary. The officers proceeded to enter the house and attempted to arrest the defendant. They found him in a bedroom hiding under a mattress. At gunpoint they ordered him out from under the mattress and to a position with his hands against the wall. They advised him that he was under arrest and commenced a pat-down search. The defendant, claiming the officers needed a warrant, began to struggle with the officers. The fight moved through several rooms of the house as the officers, who were without their handcuffs, tried to subdue the defendant. During the struggle, Ms. Clancy attempted to assist the defendant by hitting the officers with a ceramic plate, a hammer and then a

---

[1] ORS 164.225, 162.165 and 163.175. This case was previously before us in *State v. Girard,* 25 Or App 169, 548 P2d 505, *rev'd* 276 Or 511, 555 P2d 445 (1976), wherein we upheld a trial court order suppressing evidence.

wine bottle. She gave the bottle to defendant who struck Officer Bradshaw with it, stunning him. At this point, in an effort to restore calm, the officer left to call for assistance, although he told defendant he was going to get a warrant. Officer Congdon also backed out of the house so as to give Bradshaw the keys to their police vehicle. While he was doing so, defendant came out of the house and threatened Congdon with a metal table leg. Congdon drew his service revolver and ordered defendant to stop. Defendant then ran back into the house. When additional police officers arrived, Officers Congdon and Bradshaw reentered the house to capture the defendant. The defendant, however, had fled through a window in the interim.

## I

Defendant contends that the trial court erred in instructing the jury on flight. The instruction was as follows:

> "In this case you have received evidence that the defendant concealed himself from the police officers and fled when they attempted to arrest him. You are instructed that such evidence alone cannot provide a basis for a finding of guilty. However, if you find these facts are established, you may consider them as evidence of a consciousness of guilt."

We held in *State v. McCormick,* 28 Or App 821, 561 P2d 665, *rev'd on other grounds* 280 Or 417, 571 P2d 499 (1977), that a requested flight instruction was properly refused because it would have constituted a comment on the evidence.[2] We noted there:

> "* * * An instruction on flight calls upon the court to point out a particular piece of evidence and disclose to the jury its probative value, i.e., the inference of guilt. Rarely would a party against whom such an instruction

---

[2]The requested instruction in *State v. McCormick,* 28 Or App 821, 561 P2d 665, *rev'd on other grounds* 280 Or 417, 571 P2d 499 (1977), was:

" 'I instruct you that if you find evidence that a witness in this case was a suspect and that he fled, then, you may consider that evidence as bearing upon that witness' consciousness of guilt and you may draw an inference against that witness.' " 28 Or App at 824.

is given agree with the inference. The court's instruction lends credence to the arguable inference and suggests to the jury it must be made." 28 Or App at 826.

On appeal the Supreme Court said:

"We agree with the Court of Appeals that the debatable significance of flight can in most cases be left to argument by the parties, unless the trial court believes in the particular case that the issue should be clarified for the jury. * * *" 280 Or at 421.

Following the Supreme Court's decision in *McCormick,* we held in *State v. Nulph,* 31 Or App 1155, 572 P2d 642 (1977), that while the giving of a flight instruction was error because the evidence of flight was negligible, the error was harmless because the instruction was "so equivocal and insubstantial that the risk of prejudice was nil." 31 Or App at 1155.

Subsequently in *State v. Wright,* 31 Or App 1345, 572 P2d 667 (1977), we applied by analogy the rule announced by this court in *McCormick* to an instruction concerning testimony that defendant had concealed evidence of the crime charged. We held that the instruction was improper because it singled out one of several possible inferences to be drawn from the evidence of concealment.

In *State v. Stilling,* 31 Or App 703, 571 P2d 184 (1977), we said that the defendant's exception to the trial judge's instruction on flight was not sufficiently definite to raise the issue here under discussion.

The instruction given in the instant case lends no less credence to the arguable inference than the instruction in *State v. McCormick, supra,* would have in that case. It was error to give the instruction.

We further conclude that it was not harmless error to give the instruction in this case because of the language of the instruction and the nature of the case. *Cf., State v. Nulph, supra.* The instruction given by the trial court in this case informs the jury that (1) there was evidence of flight and (2) if believed, the evidence

could be considered as evidence of defendant's consciousness of guilt. When the basis of a crime with which a person is charged is flight, as in this case where the defendant was charged with escape, the prejudice of the trial court's pointing out evidence of flight is obvious.

The prejudice resulting from the giving of this erroneous flight instruction compels us to reverse and remand for a new trial. Since defendant's other assignments of error are likely to recur on retrial, they will be considered here.

## II

Defendant contends that the trial court erred in excluding certain portions of the testimony of Dr. Parvaresh, the defense's medical expert, which involved statements made by defendant to Dr. Parvaresh during his examination of defendant. Dr. Parvaresh examined defendant at the county jail, during which time defendant related his medical history and a history of drinking and drug abuse, including statements that the defendant had been drinking on the days of the burglary and escape.

Defendant attempted to elicit testimony from Dr. Parvaresh as to the social and medical history defendant related, but the court sustained the state's objection to the evidence on the ground that statements by defendant to a *nontreating* physician were not admissible.

We conclude that the trial court was in error in excluding the testimony of Dr. Parvaresh on this ground. *See, State v. Harris,* 241 Or 224, 241, 405 P2d 492 (1965); *State v. Goss,* 33 Or App 507, 577 P2d 78 (1978).

## III

Defendant also claims that the trial court erred in denying defendant's motion for acquittal on the charge

[ 90 ]

of escape in the first degree. Defendant argues that he was not in custody at the time he left the residence; that he was not aided by Ms. Clancy in his departure; and that no physical force was used against the officers to accomplish the departure. Defendant's contentions are premised on his interpretation of the facts to the effect that Officers Congdon and Bradshaw voluntarily left the residence, thereby releasing defendant from custody.

Pertinent parts of ORS 162.165 provide:

"(1)  A person commits the crime of escape in the first degree if:

"(a)  Aided by another person actually present, he uses or threatens to use physical force in escaping from custody * * *."

ORS 162.135(3) provides in part:

" 'Custody' means the imposition of actual or constructive restraint by a peace officer pursuant to an arrest * * *."

We have reviewed the testimony of Officers Congdon and Bradshaw, the only witnesses who testified concerning the escape, and conclude that the trial court properly denied defendant's motion for acquittal. There was sufficient evidence from which a jury could conclude that defendant was in the custody of the officers when he was placed under arrest at gunpoint and searched, and that his escape through the window succeeded only because his resistance, with the assistance of Ms. Clancy, forced the officers to withdraw from the house. *See,* R. Perkins. Criminal Law 500-01 (2d ed 1969).

IV

Defendant's final contention is that the state should have been required to elect between charging Escape I and Assault II, under *State v. Fitzgerald,* 14 Or App 361, 513 P2d 817 (1973).

The indictment charging defendant with assault and escape is as follows:

"COUNT I

"The said defendant on or about the 14th day of November, 1974, in the County of Clackamas State of Oregon, then and there being, did then and there unlawfully and knowingly cause physical injury to W. R. Bradshaw by means of a dangerous weapon, to-wit: bottle, to-wit: by striking him in the head, said act of defendant being contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Oregon.

"COUNT II

"And as part of the same act and transaction as alleged in Count I herein, the said defendant in the County of Clackamas, State of Oregon on the date alleged then and there being, did then and there unlawfully and knowingly, being aided by another person actually present, use physical force in escaping from the custody of W. R. Bradshaw and Paul Congdon, peace officers, said act of defendant being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Defendant was convicted of both escape and assault as well as burglary. He was given suspended sentences of five years on each charge to run concurrently, and placed on five years' probation on each charge to run concurrently.[3]

In *State v. Fitzgerald, supra* at 374-75, we held that a person could not be charged with attempted first degree escape and first degree assault because the legislature, in classifying the various degrees of escape by the risk of harm involved, intended that separate convictions and sentences could not be imposed for both attempted first degree escape and first degree assault.

---

[3] On September 14, 1977, approximately five months after he was sentenced, the defendant's probation was revoked and the sentence was carried into execution.

[ 92 ]

The instant case presents nearly the same situation except that the state has chosen to allege in the indictment that defendant committed first degree escape by using *physical force* and the aid of another person in escaping. ORS 162.165(1)(a).[4] Assault in the second degree as herein alleged may be committed by using a deadly or dangerous weapon to cause physical injury. ORS 163.175(1)(b). The analysis of *State v. Fitzgerald, supra,* must be reconsidered, however, in light of two recent cases.

*State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978), and *State v. Cloutier,* 33 Or App 121, 575 P2d 996 (1978), both hold that the question of whether given conduct constitutes multiple offenses as distinguished from only one offense is a question of legislative intent. At issue here is whether the legislature intended that a single violent act[5] be punished as the use-of-force element of first or second degree escape and separately punished as the cause-physical-injury element of assault.

*State v. Gilbert, supra,* in analyzing ORS 131.505 (2) suggests an affirmative answer. *State v. Cloutier, supra,* however, indicates that where the offenses are either different degrees of the same crime or the lesser crime is necessarily included in the greater, a person cannot be convicted of both offenses. The present case fits neither of these categories because the two charges are not unrelated, nor is either wholly a component part of the other.

---

[4]First degree escape may also be committed by using a deadly or dangerous weapon. ORS 162.165(1)(b). The state attempted to distinguish *State v. Fitzgerald,* 14 Or App 361, 513 P2d 817 (1973), on the basis that it involved an indictment alleging escape in the first degree by use of a deadly weapon, rather than physical force with the aid of another person as in the instant case. Therefore, in this case two punishable criminal acts were committed: (1) escape using physical force and the aid of another and (2) an assault using a deadly or dangerous weapon.

[5]Although the degree of force utilized by defendant in effecting his escape increased during the sequence of events previously described, his acts of violence must be considered as a single act of force since the escape would not have been accomplished but for the escalation of his attacks.

■ We conclude that the statutory scheme indicates the legislature did not intend that a person could be separately convicted and sentenced for first and second degree escape based on use of force and assault when exactly the same force causes physical injury. The interest protected by the use-of-force element of escape and the assault statutes is exactly the same. The overlap between the two crimes, although not necessarily complete, is substantial. While a portion of the rationale of *State v. Fitzgerald, supra,* was modified by *Gilbert* and *Cloutier,*[6] we think *Fitzgerald* reached the correct conclusion on the ultimate question of legislative intent.

Reversed and remanded for a new trial.

---

[6] *State v. Fitgerald, supra,* seems to assume there is a complete correlation between the use-of-force element of escape and the cause-physical-injury element of assault. That is incorrect.