Argued December 21, 1977, reversed and remanded May 8, reconsideration denied June 7, petition for review denied July 25, 1978, 283 Or 99

STATE OF OREGON, *Respondent,*

*v.*

KEVEN KENT MASSEY, *Appellant.*

(No. 6468 Cr, CA 8609)

577 P2d 1364

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

THORNTON, J.

**THORNTON, J.**

Defendant appeals from his conviction by a jury of manslaughter in the second degree. ORS 163.125. The only issue on appeal is whether certain evidence of the social and medical history of the defendant and the victim was erroneously excluded.

Defendant, who was 18 years of age, and the victim, a 48-year-old female, had been living together for approximately three months prior to the victim's death. The relationship was largely platonic, with the victim and defendant assuming mother and son roles. Defendant admitted killing the victim, but claimed that he was not guilty by reason of a mental disease or defect.[1] Defendant's parents testified concerning defendant's upbringing and childhood experiences, and Dr. Norman Janzer, a psychiatrist, testified as to defendant's mental condition, which he said was sufficiently impaired to prevent defendant from appreciating the criminality of his conduct or conforming his conduct to the requirements of law.

In making his diagnosis that defendant was a schizoid personality who, in stressful situations, decompensated into an acute paranoid schizophrenic state, Dr. Janzer relied upon interviews with defendant and his parents, psychological testing, and social and medical history records of the defendant dating back to early childhood. Dr. Janzer also reviewed a diary kept by the victim, a letter from the victim to a co-worker and the medical records of the victim's two commitments to the Oregon State Hospital, the second

---

[1] ORS 161.295 provides:

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

approximately nine months prior to her death.[2] The importance of Dr. Janzer's diagnosis of the victim's mental state was that he believed a sort of "symbiotic" madness existed between the victim and defendant which led to the killing.

The excluded evidence at issue in this case consists of (1) defendant's army records and the records of his residency at a boys' ranch, between the ages of six and sixteen years, and (2) the victim's diary, letter, medical records and testimony of a co-worker concerning the victim's second mental commitment.

## BOYS RANCH AND ARMY RECORDS

Defendant was sent to the ranch by his parents who maintained that they were unable to handle him. Apparently the ranch provided a live-in program of work, school and recreation for young boys who were considered to have severe disciplinary problems. The records disclosed that while at the ranch, defendant was in constant trouble. He frequently ran away and was often in fights with other residents. The response of ranch personnel to these rule violations was to give spankings, frequently with belts or other implements.

Dr. Janzer indicated that the ranch records corroborated his diagnosis and demonstrated that defendant's violent conduct was a conditioned response manifesting itself when defendant decompensated into a paranoid schizophrenic state. Dr. Janzer testified that the army records, which contained reports of disciplinary problems and a history of drug abuse, provided additional corroboration.

The defendant and the state stipulated that the only question in dispute as to the admissibility of the ranch and army records was their relevancy. The court rejected the ranch records as irrelevant and excluded the army records because the record would have been

---

[2]Both commitments were voluntary. The victim was diagnosed as a paranoid schizophrenic, treated and released on medication after a short stay.

burdened with material which the jury would have been unable to decipher. Dr. Janzer was permitted to rely upon both sets of records in making his diagnosis of defendant's mental condition.

The state argues: (1) that the records are not relevant because they show merely an "abnormality manifested * * * by repeated * * * antisocial conduct" (ORS 161.295(2)); (2) that if the evidence was relevant the trial judge properly exercised his discretion in excluding it because it would have aroused the jury's sympathy, distracted the jury's attention from the issues of the case and consumed an undue amount of time in presentation; and (3) that in any event the error was harmless.

■ ORS 161.295(2) is intended to exclude sociopaths from using a mental disease or defect defense. *See,* Oregon Criminal Code of 1971, Commentary at 33 (1975 ed). When viewing the ranch and army records in isolation they stand only as examples of antisocial conduct on the part of the defendant. Considering all of the evidence adduced at trial, however, particularly Dr. Janzer's testimony noted above, the records' probative value is increased beyond mere evidence of a sociopathic personality.[3] The records establish a consistent behavioral pattern from which Dr. Janzer could make and check his diagnosis of defendant and form an opinion as to the reason for defendant's actions. Thus, the records are relevant and do not come within the exclusion provided by ORS 161.295 (2). *See,* 2 Wigmore, Evidence 9, § 228 (3d ed 1940).

The fact that the records are relevant does not end the inquiry, however, because relevant evidence may be excluded if its probative value is outweighed by other policy considerations. *See, Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972); *Byers v. Santiam Ford, Inc.,* 281 Or 411, 574 P2d 1122 (1978). McCormick

---

[3] *See,* Robinson, *Oregon Murders M'Naghten,* 51 Or L Rev 437, 450-51 (1972), for a brief discussion of the problems attendant to excluding sociopaths from the reach of ORS 161.295(1).

identifies four policy limits on the admission of relevant evidence:

> "* * * First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. Second, the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues. Third, the likelihood that the evidence offered and the counter proof will consume an undue amount of time. Fourth, the danger of unfair surprise to the opponent when, having no reasonable ground to anticipate this development of the proof, he would be unprepared to meet it. * * *" McCormick, Evidence 439-40, § 185 (2d ed E. Cleary 1972).

The weighing of these factors against the probative value of the evidence is an exercise of judicial discretion. *Carter v. Moberly, supra.*

In the instant case the trial court permitted Dr. Janzer to rely upon the evidence for his diagnosis, but would not permit the records themselves to be placed into evidence. After reviewing the record we cannot say that the exclusion of the ranch and army records was an abuse of discretion. As the trial court noted when rejecting the army records: "* * * [W]e [would] burden the record with a whole bunch of miscellaneous material which really the jury would be unable to decipher." Additionally, the records are cumulative of the testimony of defendant's parents and Dr. Janzer who described in some detail defendant's experiences at the boys ranch, his drug usage and his disciplinary problems in the army. *Northwestern Mutual Ins. Co. v. Peterson,* 280 Or 773, 572 P2d 1023 (1977). The introduction and consideration of the records could have consumed an undue amount of time, and extraneous material in the records which could not easily be excised might have distracted the jury from the main issues of the case.

Even if the trial court abused its discretion in excluding the records, the remote nature of the evidence, as noted above, rendered the error harmless.

[ 100 ]

*See, State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

## EVIDENCE OF VICTIM'S MENTAL STATE

Defendant attempted to introduce into evidence a diary kept by the victim. The last entry in the diary was dated the day before the killing. Defense counsel indicated to the court that the diary was relevant because it demonstrated that the victim was suffering from severe mental problems, which the defense would establish through expert medical testimony affected the behavior of defendant on the night of the killing.[4] The trial court rejected the evidence on the ground that it lacked probative value. The trial court did permit Dr. Janzer to rely upon the diary in making his diagnosis of the defendant, but the diary was not received as an exhibit.

Defendant also attempted to introduce testimony of a co-worker of the victim who took the victim to the Oregon State Hospital for her second commitment. During an offer of proof the co-worker testified that victim, on the day in question, was confused, hostile and uncommunicative. As part of the offer of proof defendant attempted to introduce the medical records of the victim's two commitments and a letter written to the co-worker. The trial court rejected the evidence noting that it was not "appropriate to this case."

At the conclusion of Dr. Janzer's testimony, defendant made an offer of proof wherein Dr. Janzer testified that the diary, letter and medical records would contribute to understanding defendant's condition and the stress that he was under on the night of the killing. The trial court in rejecting the offer noted that Dr. Janzer had been able to rely upon the material in forming his diagnosis and testifying, but that the jury was not going to see it.

---

[4]The diary was written in the first person singular with God as the narrator and the victim described as "His" daughter. During his testimony, Dr. Janzer indicated that the diary corroborated his diagnosis of defendant.

The state argues that the evidence is not relevant because evidence of the victim's mental state has only been allowed in the context of impeachment and has been restricted to cases involving self-defense or the veracity of a sex crime complaint.[5] The state also contends that if the evidence is relevant, the trial court properly exercised its discretion in excluding the evidence.

■ When interpreted by Dr. Janzer, the proffered evidence was relevant to show that the victim's mental condition was deteriorating to such a point that at the time of the killing her behavior was sufficiently uncontrolled to bring about the stress necessary to cause defendant to decompensate and lose control. The defendant's claim that he was suffering from a mental disease or defect is more believable when considered in light of the victim's mental state and Dr. Janzer's psychiatric testimony tying the victim's condition to the onset of acute paranoid schizophrenia in the defendant.

As already noted, relevant evidence may be properly excluded if its probative value is outweighed by other policy considerations. However, in this instance we conclude that the trial court abused its discretion in excluding the offered exhibits.[6] A criminal defendant has a right to put on his theory of the case, including evidence of his own mental condition at the time of the crime. Expert witnesses testifying as to a defendant's mental condition may state the basis for their diagnosis, including any relevant history relied upon to make the diagnosis. *State v. Goss,* 33 Or App 507, 577 P2d 78 (1978) (state's expert); *State v. Girard,* 34 Or App 85, 578 P2d 415 (1978) (defendant's expert). To exclude such relevant evidence when its probative

---

[5] *See, State v. Griffin,* 19 Or App 822, 529 P2d 399 (1974); *Ballard v. Superior Court,* 64 Cal 2d 159, 49 Cal Rptr 302, 410 P2d 838 (1966).

[6] The testimony of the co-worker, other than that necessary to identify the letter, was properly excluded because there was no indication by Dr. Janzer that he relied upon the testimony in making his diagnosis.

value is not shown to be outweighed by other policy considerations is error.

Unlike the situation with the boys ranch and army records, there was no detailed testimony as to the contents of the exhibits offered to establish the mental condition of the victim. Dr. Janzer was permitted to say only that he relied upon the items in making his diagnosis of defendant, and that the conclusions he reached after examining the exhibits supported his diagnosis of defendant. The jury had no way of knowing what the diary, letter or medical records said, or even how they related to the defendant's condition, because the trial court prevented Dr. Janzer from so testifying. More importantly, the jury was never presented with Dr. Janzer's theory that the victim's mental illness precipitated defendant's decompensation into a state of paranoid schizophrenia whereby he could not appreciate the criminality of his act or conform his conduct to the requirements of the law.

The trial court's failure to admit this evidence constituted prejudicial error requiring reversal of defendant's conviction in *State v. Van Hooser, supra.*

Reversed and remanded.