JAMES, J.
*409 Defendant appeals from a judgment of conviction for one count of burglary in the first degree, ORS 164.225, one count of burglary in the second degree, ORS 164.215, and one count of theft in the third degree, ORS 164.043. On appeal, defendant raises two related assignments of error, arguing that the trial court erred when it refused to give his requested jury instructions on the choice-of-evils and duress defenses. Specifically, defendant argues that he presented sufficient evidence from which a jury could infer that he participated in the crimes because his codefendant's brother threatened serious harm to defendant's daughter and, thus, the trial court should have instructed the jury on the defenses. We conclude that defendant presented *380 sufficient evidence in support of the requested instructions. Accordingly, we reverse and remand.
We review a trial court's refusal to give a requested jury instruction for legal error and view the record in the light most favorable to the requesting party. State v. Oneill , 256 Or. App. 537, 538, 303 P.3d 944, rev. den. , 354 Or. 342, 313 P.3d 1126 (2013). "Whether the evidence [in the record] entitles a defendant to a jury instruction on a defense is governed by the statutory requirements for establishing the defense." State v. Boldt , 116 Or. App. 480, 483, 841 P.2d 1196 (1992). Therefore, "[i]f there is any evidence in the record from which the jury could infer the required elements of [the defense], the issue should be submitted to them." State v. Matthews , 30 Or. App. 1133, 1136, 569 P.2d 662 (1977). We state the facts in accordance with that standard.
Defendant was dropping off his girlfriend at her mother's house near Stayton and Lyons late in the evening. After the girlfriend exited defendant's car, but before he pulled away from the mother's house, the girlfriend's mother and the girlfriend's uncle (the mother's brother) approached defendant's car. The mother (defendant's codefendant) approached the passenger side of defendant's car and the uncle leaned into defendant's driver side window. The uncle asked defendant to give the mother a ride and defendant agreed, as long as the stop was on his way home. The uncle replied, "No, you will give [the mother] a ride if you don't want *410 anything to happen to your daughter." Defendant's daughter lived with defendant at his home in Salem. Defendant's girlfriend had met his daughter and the mother knew where defendant lived.
The mother got into defendant's car and they left. Eventually, the mother instructed defendant to pull over and park along a rural highway; she then got out of the car and told defendant to wait for her in the car. After about 20 minutes, the mother returned to the car and told defendant to get out and follow her to a residence located off of the rural highway. Defendant did what he was told, following her to the residence and then waiting outside while she went inside. Defendant stood outside for about an hour when the mother ran out of the residence, shoved some jewelry into defendant's hands, and said, "Let's go." Defendant and the mother ran in different directions. Defendant ran out of one of his shoes and hid behind a pile of cut trees on the property.
Deputy Church was on patrol when he noticed defendant's car parked along the rural highway. Church was familiar with the property and knew that the resident was a woman in her nineties and who lived alone. Church decided to check on the resident. As he approached the residence, he noticed that the garage door had been forced open and that the doorjamb was broken. He also noticed shoe impressions in the frost that led away from the house. Church followed the shoe impressions and found a single athletic shoe. Soon after, defendant was found hiding behind a pile of cut trees, wearing a single athletic shoe that matched the shoe Church found near the house, and was taken into custody.
At trial, Church testified that defendant was cooperative while in custody, that defendant immediately started telling Church what had happened, and that defendant assisted Church in locating the mother. Church was asked, "Did [defendant] tell you that [defendant] had done this because somebody else had forced him to?" Church replied, "Coerced him, yes sir." Church also testified that defendant had asked Church to call defendant's father in Salem, because someone needed to check on defendant's daughter. Church's patrol car recording captured defendant saying, *411 "Please, please find [daughter]" and "[i]f [daughter's] not at home, then that [uncle] has her."
Defendant testified at trial that he could not remember the exact wording of the uncle's statement but that he knew that "it was a clear message," that "it was clearly a threat," and that he was "scared for [his] daughter." Moreover, defendant testified that he had heard that the uncle "was a dangerous guy and [uncle] had been to prison and just not somebody you want to screw around with." When asked what the "clear threat" from the uncle was, defendant testified, "That if I didn't want anything to happen to *381 my daughter that I would do what [the mother] told me to do" and "that my daughter is in danger if I don't do what they say." Defendant was asked why he did not leave and go for help and he testified to his fear "[t]hat something would happen to my daughter [and] I didn't know-I just had heard stories about this [uncle], I didn't know-you know, because I had no phone, no way to contact [daughter] to make sure she was okay."
At trial, defendant argued that the evidence was sufficient to permit the jury to consider the choice-of-evils and duress defenses. The state argued that the evidence defendant submitted was so vague that it did not support either instruction and asked the court to refuse the requested jury instructions. The trial court, agreeing with the state, refused to give the requested jury instructions on the choice-of-evils and duress defenses. The trial court ruled that it "did not find [defendant's] testimony credible regarding the purported threats" and that it did not believe that there was "sufficient evidence to support giving [the choice-of-evils and duress jury] instructions."
On appeal, defendant argues that the trial court should have instructed the jury on the choice-of-evils and duress defenses because there was sufficient evidence in the record that supported the giving of the requested instructions. The state, however, argues that defendant failed to present evidence that his daughter faced a threat of harm that was imminent and, thus, the trial court did not err when it refused to give the jury instructions on the choice-of-evils and duress defenses. We agree with defendant.
*412 ORS 161.200 sets out the elements of the statutory choice-of-evils defense. Pertinently, ORS 161.200(1) states:
"Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:
"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and
"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly out-weigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."
As we have previously explained,
"[t]o establish the choice of evils defense under ORS 161.200, defendant had to offer evidence that would be sufficient for the jury to find that: (1) his conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for him to believe that the need to avoid that injury was greater than the need to avoid the injury that [ ORS 164.043, ORS 164.215, and ORS 164.225 ], the statute[s] that he was found to have violated, seek[ ] to prevent."
Boldt , 116 Or. App. at 483, 841 P.2d 1196.
To show that criminal conduct was "necessary" within the meaning of ORS 161.200(1)(a), "defendant [is] required to put forth evidence that would allow the jury to find that he had no reasonable alternative but to commit the crime." State v. Freih , 270 Or. App. 555, 557, 348 P.3d 324 (2015) ("For a defendant's conduct to be 'necessary' to avoid a threatened injury, he must show that no other course of action was available to him but to 'choose an evil.' " (Quoting State v. Miles , 197 Or. App. 86, 93, 104 P.3d 604 (2005).)).
We turn next to ORS 161.270, which sets out the elements of the statutory duress defense. Pertinently, ORS 161.270(1) states:
"The commission of acts which would otherwise constitute an offense, other than murder, is not criminal if the *413 actor engaged in the proscribed conduct because the actor was coerced to do so by the use or threatened use of unlawful physical force upon the actor or a third person, which force or threatened force was of such nature or degree to overcome earnest resistance."
We have explained that "[i]n order to constitute duress under ORS 161.270, the danger must be 'present, imminent, and impending.'
*382 " Boldt , 116 Or. App. at 483, 841 P.2d 1196 (citing State v. Fitzgerald , 14 Or. App. 361, 371, 513 P.2d 817 (1973) ). "To show that the injury that the defendant sought to avoid was 'imminent' within the meaning of [either ORS 161.200 or ORS 161.270 ], defendant [is] required to show that the threat of injury existed at the time that defendant committed his offense." Freih , 270 Or. App. at 557, 348 P.3d 324 ("[F]or a threatened injury to be 'imminent' under either ORS 161.200 or ORS 161.270, the threat must exist at the time of the commission of the charged offense." (Quoting Boldt , 116 Or. App. at 483-84, 841 P.2d 1196.)). It is not that the injury itself must be imminent, rather the threat of the injury must exist at the time the offense is committed. 270 Or. App. at 560, 348 P.3d 324. Where "the threat of injury, if there was one, existed on the day that defendant [committed the crimes] and was conditioned on what [defendant] might do on that date" then the defendant has met the element of imminence and the instruction on the defense would be appropriate. Boldt , 116 Or. App. at 484, 841 P.2d 1196. Consequently, "it [is] for the jury to determine the weight of the evidence, including whether defendant reasonably believed that the threat would be carried out." Id .
In this case, viewing the record in the light most favorable to the requesting party, defendant presented sufficient evidence in support of both requested instructions. Defendant testified at trial that he had no phone to contact his daughter to check on her or warn her of the uncle's threat and, thus, defendant believed injury to his daughter was imminent if he did not do what the uncle and the mother told him to do. Similarly, Church testified that defendant asked him to check on defendant's daughter. Defendant told the deputy that he feared for his daughter's safety that night because of the uncle's threats and he wanted someone to check on her as soon as possible. Defendant told Church that defendant believed he had been coerced into committing the *414 crimes that night, further evidencing defendant's understanding that the uncle's threats of harm were imminent, and that defendant's participation in the alleged crimes was necessary to avoid immediate harm to his daughter. It is worth reiterating that it was not for the trial court to determine whether defendant put forward "credible" evidence, but merely to determine whether defendant put forward "any evidence * * * from which the jury could infer the required elements of [the defense]." See Matthews , 30 Or. App. at 1136, 569 P.2d 662.
We conclude that defendant presented sufficient evidence to support the requested jury instructions on the choice-of-evils and duress defenses. The trial court therefore erred in refusing to give those instructions.
Reversed and remanded.