Argued and submitted October 10, 2011, affirmed March 28, petition for review allowed September 13, 2012 (352 Or 377)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD ALAN EVERETT,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0800419; A140675 (Control), A144356

274 P3d 297

George W. Kelly argued the cause and filed the brief for appellant. Ronald Alan Everett filed the supplemental brief *pro se.*

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment of conviction of two counts of solicitation to commit aggravated murder and solicitation to commit second-degree assault. ORS 161.435. He assigns error to the trial court's denial of his motion for judgment of acquittal and its admission of testimony from a state's witness who invoked his privilege against self-incrimination during cross-examination. We affirm.

Because the case arises, in part, from defendant's motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Baker-Krofft*, 348 Or 655, 658 n 1, 239 P3d 226 (2010). Defendant was arrested for, among other things, attempting to run over Clackamas County Deputy Sheriff Moss with his car. Moss was the only witness to that incident. While in custody at the Clackamas County Jail, defendant met Piatt, who at the time was a member of a motorcycle gang called the Outsiders Motorcycle Club (the Outsiders). The Outsiders derives its income from illicit activities. Piatt was an "enforcer," who enforced the Outsiders's rules and "straightened out" people who were violating its guidelines. After learning that Piatt would be released from jail soon, defendant, who knew of Piatt's role in the Outsiders, solicited Piatt to murder Moss so she would not testify at his trial. Unbeknownst to defendant, Piatt was a police informant and notified Clackamas County detectives about defendant's solicitation. Piatt's conversation with detectives was recorded onto a DVD.

Moss testified against defendant at trial, and defendant was subsequently convicted of various charges that are unrelated to this appeal. After that trial, the state charged defendant with one of the crimes pertinent to this case, solicitation to commit aggravated murder of Moss. Piatt testified before the grand jury, and his name was listed as a witness on defendant's indictment.

Defendant also learned about the DVD showing Piatt's interview with the detectives. While awaiting trial for the solicitation charge, defendant met another inmate, Van Alstine, who was scheduled for release. Defendant repeatedly talked to Van Alstine about Piatt being in a biker gang

and how Piatt had "ratted him out" at his previous trial. Those conversations took place over several days, until defendant asked Van Alstine if he would retrieve and deliver to the Outsiders the indictment showing Piatt's name as a witness and the DVD showing detectives interviewing Piatt. Defendant told Van Alstine that, once the Outsiders saw the video, "they were going to take care of their own." Defendant told Van Alstine that the Outsiders "would take care of Barry Piatt" and would "get rid" of him. Defendant explained to Van Alstine that he wanted the Outsiders to have the DVD "so Barry Piatt doesn't show up to court." Defendant promised to give Van Alstine his sports car as payment if Van Alstine made the requested delivery.

Unbeknownst to defendant, Van Alstine was also an informant who notified the Clackamas County sheriff's department of his conversations with defendant. As a result, the state charged defendant with two counts of solicitation, solicitation to commit aggravated murder and to commit assault of Piatt, in addition to the earlier charge of solicitation to commit aggravated murder of Moss. All of the solicitation charges against defendant were tried together.

Before trial, the trial court denied defendant's motion *in limine* to exclude evidence of defendant's prior conviction arising from his attempt to run over Moss. At trial, the state introduced the facts above. Piatt testified that he had prior convictions for assault and was an "enforcer" for the Outsiders. He admitted that he committed criminal acts as an enforcer. He also testified that a member who cooperates with police as an informant risks being killed.

Outside of the jury's presence, defendant's attorney asked Piatt whether he had ever killed anybody. Piatt refused to answer, invoking his Fifth Amendment right against self-incrimination. Defendant moved to strike all of Piatt's testimony, arguing that he would not have an adequate opportunity to cross-examine Piatt, thus depriving him of his confrontation rights under both the United States and Oregon constitutions. The court denied the motion, and defendant moved for a mistrial, which was also denied. Despite Piatt's invocation of his constitutional right, defendant's attorney cross-examined Piatt on a variety of issues,

including Piatt's prior assaults and drug convictions, his plea agreement, the motorcycle culture, his motivations for testifying, the conversations that he had with defendant while in jail, and his conversations with detectives.

At the conclusion of the state's case-in-chief, defendant moved for a judgment of acquittal on Counts 2 and 3—solicitation to murder Piatt and solicitation to assault Piatt—arguing that the state failed to present evidence that defendant solicited Van Alstine to do anything illegal and that no solicitation occurred because the solicitee, the Outsiders, never received the DVD. The court denied defendant's motion. Defendant ultimately was convicted on all counts.[1]

On appeal, defendant renews his arguments, assigning as error the trial court's denial of his motions for judgment of acquittal, to strike Piatt's testimony, and for mistrial. In a supplemental *pro se* brief, defendant argues that the trial court improperly denied his motion *in limine* to exclude evidence of his prior conviction, which we reject on the basis of OEC 404(3), without further discussion. We discuss each of his other assignments in turn.

We begin with defendant's first assignment of error, the trial court's denial of his motion for judgment of acquittal on Counts 2 and 3 for solicitation of Van Alstine. When reviewing a denial of a motion for judgment of acquittal, we determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Lotches*, 331 Or 455, 498, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). When the facts are not in dispute, as in this case, we review the denial of a motion for judgment of acquittal as a question of law. *State v. Nollen*, 196 Or App 141, 144, 100 P3d 788 (2004).

The state charged defendant with soliciting Van Alstine to "unlawfully and intentionally cause the death of Barry Piatt" or "unlawfully and intentionally and knowingly cause serious physical injury to Barry Piatt." Defendant contends that, because he did not ask Van Alstine personally to

---

[1] The conviction on Count 2, solicitation to commit aggravated murder, merged with Count 3, solicitation to commit assault in the second degree.

murder or harm Piatt, he should have been acquitted of those counts. Defendant's argument requires us to interpret the solicitation statute, ORS 161.435(1). When reviewing a statute, our task is to discern the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We first look at the text and context of the statute, and will consider legislative history if it appears useful to the court's analysis. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009).

Solicitation is defined in ORS 161.435(1):

"A person commits the crime of solicitation if with the intent of causing another to engage in specific conduct constituting a crime punishable as a felony or as a Class A misdemeanor or an attempt to commit such felony or Class A misdemeanor the person commands or solicits such other person to engage in that conduct."

The statute thus provides that a person is guilty of solicitation if that person "commands or solicits" another person to engage in specific criminal conduct that is either a felony or a Class A misdemeanor.

Defendant argues that, under *State v. Lee*, 105 Or App 329, 804 P2d 1208, *rev den*, 311 Or 427 (1991), he could not be convicted of solicitation because the Outsiders never received the DVD or indictment. In *Lee*, the police intercepted a letter that the defendant sent to his friend soliciting him to commit a robbery. We vacated the solicitation conviction because "a completed communication is required to prove the crime of solicitation." *Id.* at 333. In defendant's view, his conviction should also be vacated because he did not complete a communication with the Outsiders.

The state responds by arguing that *Lee* does not apply, and the issue here is whether defendant engaged another to perform a criminal act, even if the details of how the crime was to be committed were not specified. *State v. Johnson*, 202 Or App 478, 485, 123 P3d 304 (2005), *rev den*, 340 Or 158 (2006). We agree with the state.

Defendant's reliance on *Lee* is misplaced. We agree that defendant did not complete a communication with the

Outsiders and cannot be convicted for soliciting it or its members. However, the state did not charge defendant with soliciting the Outsiders. Rather, the state charged defendant with, and the jury convicted him of, soliciting Van Alstine to cause Piatt's death or injury. We reject defendant's suggestion that he placed his request in the hands of a messenger, an intermediary, to simply deliver a message to a third party. Although an intermediary who unknowingly delivers a message soliciting criminal acts would not commit a crime, the intermediary becomes liable as an accomplice to the crime when he carries a message of solicitation of that crime, knowing that the message will further that crime. *See State v. Fitzgerald*, 14 Or App 361, 367-68, 513 P2d 817 (1973).

In *Fitzgerald*, an inmate had a jail cell between the defendant and the defendant's accomplice. Even though the inmate had no desire to escape, we held that his "act of passing [a] hacksaw back and forth between [the accomplice] and defendant amounted to aiding and abetting the attempted escape[.]" *Id*. at 367. The jury could infer the inmate's intent "to promote or facilitate" the defendant's crimes within the meaning of ORS 161.155(2)(b), which addresses liability for aiding and abetting the criminal conduct of another person,[2] because the inmate knew that delivering the hacksaw between the defendant and his accomplice would further the defendant's escape. *Id*. at 368.

Likewise, when an intermediary knows that the message or documents he is delivering to a third party will further a crime, the intermediary aids and abets that crime. An intermediary who aids or abets a crime becomes criminally liable for that crime. ORS 161.155(2)(b). Hence, when a person solicits that intermediary to deliver the message and

---

[2] ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

tells the intermediary the consequences of the delivery, the person is soliciting the intermediary to engage in "specific conduct constituting a crime" under ORS 161.435(1), namely, aiding and abetting the target crime.

The commentary concerning the crime of solicitation accompanying the Criminal Law Revision Commission's final draft is consistent with our conclusion:

> "Pursuant to this section where $A$ solicits $B$ to commit a crime specified by $A$ (or where $A$ solicits $B$ to solicit $C$ to commit such crime), $A$'s act constitutes the crime of solicitation whether or not $B$ (or $C$, as the case may be) actually commits the crime or attempts to commit the crime."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 57, 56 (July 1970) (italics in original). Therefore, we hold that, as a matter of law, a person commits the crime of solicitation when that person solicits an intermediary to procure a third party to commit the intended crime so long as the intermediary is aware of that intended crime.

Applying those principles to the facts in this case, a reasonable jury, viewing the facts in the light most favorable to the state, could find defendant guilty of solicitation of Van Alstine. Defendant never directly asked Van Alstine to murder or injure Piatt, but solicited him to deliver a DVD and indictment to the Outsiders. Throughout the course of their conversation, defendant told Van Alstine that, once the Outsiders saw the DVD, "they would take care of Barry Piatt," "handle their own," and "get rid" of Piatt. Van Alstine could infer from defendant's statements that, had he delivered the DVD and indictment, the Outsiders would "take care of Barry Piatt" by murdering or injuring him. Had Van Alstine delivered the requested materials, he would have aided and abetted in the crimes the Outsiders would have or could have committed as a result. Based on those facts, a jury could find defendant guilty of soliciting Van Alstine to cause the murder or injury of Piatt. Therefore, the trial court properly denied defendant's motion for judgment of acquittal.

We turn to defendant's second and third assignments of error. Defendant assigns as error the trial court's

denial of his motion to strike the entirety of Piatt's testimony and his motion for mistrial, but he makes one combined argument with respect to those assignments of error. Specifically, defendant contends that he was prejudiced when Piatt invoked his Fifth Amendment privilege, which then precluded defendant from adequately cross-examining Piatt.

We review the trial court's denial of defendant's motion to strike Piatt's testimony for abuse of discretion. *State v. Cox*, 337 Or 477, 490, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005). Trial courts have broad discretion to control the presentation of evidence, including the "discretion to strike the testimony of a witness who refuses to answer questions on cross-examination or to impose a less onerous sanction when appropriate." *Id.* at 490. Our review of the trial court's denial of a mistrial is also for abuse of discretion because the trial court is in "the best position to assess and to rectify the potential prejudice to the defendant." *State v. Pratt*, 316 Or 561, 574, 853 P2d 827, *cert den*, 510 US 969 (1993).

In defendant's view, had Piatt denied killing anybody, it would have been apparent that defendant had no reason to approach Piatt and to ask him to murder Moss. Therefore, according to defendant, Piatt's answer to defendant's question directly related to the subject matter of the case and to whether he had committed the crime of soliciting Piatt to kill the deputy, thereby requiring all of Piatt's testimony to be stricken. We disagree.

Defendant's argument hinges on whether Piatt's invocation of privilege prevented defendant from adequately cross-examining him. When a witness refuses to answer questions on cross-examination that are *necessary* to test the witness's direct testimony, the trial court has discretion to strike the witness's testimony because it undermines the trier of fact's ability to rely on the witness's direct testimony. *Cox*, 337 Or at 493. Whether the court should strike the witness's testimony depends on whether the question directly relates to the subject matter of the witness's direct examination or relates to a collateral matter. *Id.* at 493-94.

In this case, we cannot say that the trial court abused its discretion in refusing to strike all of Piatt's testimony. First, defendant's question to Piatt as to whether he

had ever killed anybody was of limited relevance to defendant's theory that he had no reason to ask Piatt to murder Moss or to ask Van Alstine to deliver the indictment and the DVD showing Piatt's interview with detectives to the Outsiders. Given that Piatt had not testified that he had killed anyone and instead testified to committing assaults, even after the exclusion of the question, defendant maintained the ability to argue that there accordingly was no evidence from Piatt that any of the Outsiders or Piatt himself had killed anyone, or that defendant believed that Piatt or the Outsiders had done so. Second, defendant's question to Piatt also was not necessary to prove defendant's theory because the trial court allowed ample opportunity for defendant to elicit testimony to bolster his defense without Piatt invoking his constitutional right against compelled self-incrimination. When the trial court denied defendant's motion to strike, it told defendant that it had no intention of limiting defendant's cross-examination of Piatt to certain subjects. That allowed defendant to ask Piatt other questions to suggest why defendant had no reason to believe that Piatt was capable of murdering Moss or that the Outsiders were capable of murdering Piatt or any other witness. Given the attenuated relevance of the proposed question and possible answer and defendant's otherwise unfettered ability to cross-examine Piatt, the trial court's exclusion of the question did not require it to strike all of Piatt's testimony.

Defendant also argues that, because he was denied an opportunity to cross-examine Piatt about committing murder, Piatt's testimony as a whole cannot be admitted under *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004).[3] In that case, the United States Supreme Court held that the Sixth Amendment's Confrontation Clause precludes admission of out-of-court testimonial statements, unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Id.* at 53-54. The Confrontation Clause guarantees only the " '*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' "

___

[3] At trial, defendant raised his confrontation clause argument under both the United States and Oregon constitutions. On appeal, defendant raises only the Sixth Amendment challenge.

*State v. Sullivan*, 217 Or App 208, 213, 174 P3d 1095 (2007), *rev den*, 344 Or 539 (2008) (quoting *Delaware v. Fensterer*, 474 US 15, 20, 106 S Ct 292, 88 L Ed 2d 15 (1985)).

There are at least two problems with defendant's argument. First, Piatt's trial testimony was not an out-of-court statement, so *Crawford* does not apply to it. Second, Piatt was available for cross-examination and was, in fact, cross-examined about his direct testimony. And, as we discussed above, whether Piatt ever killed anyone was a collateral matter. Accordingly, we conclude that the trial court did not abuse its discretion when it denied defendant's motion to strike Piatt's testimony and his motion for a mistrial.

Affirmed.