670 June 26, 2014 No. 44

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

RONALD ALAN EVERETT,
*Petitioner on Review.*

(CC CR0800419; CA A140675 (Control),
A144356; SC S060300)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 14, 2013, at the University of Oregon Law School, Eugene.

George W. Kelly, Eugene, argued the cause and filed the brief for petitioner on review.

Douglas F. Zier, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

LANDAU, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
* Appeal from Clackamas County Circuit Court, Robert R. Selander, Judge. 249 Or App 139, 274 P3d 297 (2012).

**LANDAU, J.**

In this criminal case, defendant was charged with soliciting another person to commit aggravated murder. ORS 161.435(1).[1] The evidence at trial showed that defendant asked the other person to deliver certain information to a third person, which defendant thought would cause *that person* to commit aggravated murder. The issue in this case is whether that evidence is sufficient to establish that defendant solicited the other person to commit aggravated murder. The trial court held that the evidence was sufficient. The Court of Appeals affirmed. *State v. Everett*, 249 Or App 139, 274 P3d 297 (2012). That court reasoned that, because the evidence showed that defendant had solicited another person to engage in conduct that would have constituted aiding and abetting murder, that amounted to soliciting to engage in conduct constituting murder itself. *Id.* at 144-45. For the reasons that follow, we agree and affirm.

The relevant facts are not in dispute. Defendant attempted to run over Clackamas County Deputy Sheriff Moss with his car in an effort to abscond from a traffic stop. While in jail awaiting trial on charges that arose out of that incident, defendant met Piatt, a former member of the "Outsiders Motorcycle Club," a group involved in illicit activities. Defendant knew Piatt to be a club "enforcer"—one who dealt with members who offended club rules.

Defendant asked Piatt to murder Moss, once Piatt was released from jail, to prevent Moss from testifying at defendant's upcoming trial. Unbeknownst to defendant, Piatt knew Moss from previous encounters and had worked with her as an informant. Piatt reported to authorities that defendant had asked him to kill Moss and submitted to an interview. Police recorded Piatt's interview on a DVD.

Defendant was tried and ultimately convicted of attempted second-degree assault and other charges arising

---

[1] ORS 161.435(1) provides:

"A person commits the crime of solicitation if with the intent of causing another to engage in specific conduct constituting a crime punishable as a felony or as a Class A misdemeanor or an attempt to commit such felony or Class A misdemeanor the person commands or solicits such other person to engage in that conduct."

from the initial Moss incident. At trial, the state played Piatt's DVD interview, and defendant realized that Piatt had reported to the authorities that defendant had asked him to kill Moss. At about the same time, defendant, while still housed in jail, met another inmate, Van Alstine. Van Alstine was about to be released from jail. Over the course of several days, defendant had a number of conversations with Van Alstine about the fact that Piatt was a member of the Outsiders who had "ratt[ed] on him" to the police and that Piatt's interview with police had been recorded on a DVD. Defendant asked Van Alstine, once he was released from jail, to deliver to the Outsiders a copy of the Piatt interview DVD and a copy of an indictment containing Piatt's name.[2] Defendant told Van Alstine to find the Outsiders' "clubhouse," on 82nd Avenue in Portland, and give the information to a person with an Outsiders vest patch, indicating that the person is a member of the club. Defendant explained that the Outsiders, upon receiving the information, would "take care of" and "get rid of" Piatt, that they would "handle it," so that "Piatt would not testify" against him. In exchange for the anticipated delivery, defendant told Van Alstine that he would give Van Alstine his car.

Van Alstine never obtained a copy of the DVD, and he never delivered anything to the Outsiders on defendant's behalf. Instead, he reported his conversations with defendant to the authorities. Defendant ultimately was charged with crimes arising out of his conversations with both Piatt and Van Alstine. As to the former, he was charged with soliciting Piatt to commit the aggravated murder of Moss. As to the latter, he was charged with soliciting Van Alstine to commit the aggravated murder and second-degree assault of Piatt.[3]

---

[2] It is unclear from the record whether defendant requested delivery of the earlier indictment from the initial Moss incident or whether, at this point, he anticipated (correctly) that a new indictment would be issued naming Piatt as a witness, which he wanted delivered to the Outsiders. As noted in the text below, not long after his conversations with Van Alstine, an indictment issued that named both Piatt and Van Alstine as grand jury witnesses.

[3] The indictment alleged that defendant solicited Van Alstine to commit aggravated murder based on the fact that the victim, Piatt, was a witness in a criminal proceeding. *See* ORS 163.095(2)(a)(E) (aggravated murder defined as, among other things, murder in which the victim was a "witness in a criminal

At trial, the state introduced evidence of the fore-going facts. In addition, the state elicited from Piatt testimony about the Outsiders and the fact that, if a member were found to have cooperated with the police, the Outsiders would "handle" the matter; that is, "anything from making the person understand to killing them." At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the two counts of soliciting Van Alstine to commit aggravated murder and second-degree assault, arguing that the state had failed to present evidence that defendant had solicited Van Alstine to engage in specific conduct constituting a crime. The state responded that it had introduced evidence that defendant had solicited Van Alstine to aid and abet the murder of Piatt and that such evidence established solicitation to engage in specific conduct constituting a crime. The trial court agreed with the state and denied defendant's motion. The jury returned guilty verdicts on both counts of soliciting Van Alstine and also returned a guilty verdict on the charge of soliciting Piatt. The trial court then entered a single judgment that convicted defendant of solicitation to commit murder on two counts (Piatt and Van Alstine) and that merged the count of solicitation for second-degree assault with the count for solicitation to commit murder (Van Alstine).

Defendant appealed, challenging the trial court's denial of his motion for a judgment of acquittal on the charges of soliciting Van Alstine to commit aggravated murder and second-degree assault.[4] As we have noted, the

---

proceeding" and the murder was "related to the performance of the victim's official duties in the justice system").

It bears noting that defendant was not charged with soliciting *the Outsiders* to murder Piatt. Defendant suggests that that was because of an earlier Court of Appeals decision, *State v. Lee*, 105 Or App 329, 333, 804 P2d 1208, *rev den*, 311 Or 427 (1991), which had held that solicitation required a completed communication and, therefore, a defendant whose letters outlining criminal plans never had been delivered to the intended recipient was guilty of only attempted solicitation. The question whether the state could have charged defendant with soliciting the Outsiders to murder Piatt is not before us, and we express no opinion on that issue.

[4] Defendant also asserted on both appeal and review that the trial court had erred in denying his motion to strike certain testimony of Piatt. The Court of Appeals rejected that argument. We do so as well, without further discussion.

Court of Appeals affirmed, *Everett*, 249 Or App 139, and we allowed defendant's petition for review.

On review, defendant focuses on the trial court's denial of his motion for judgment of acquittal on the charge of soliciting Van Alstine to commit the aggravated murder of Piatt. According to defendant, the Court of Appeals erred in concluding that the state had produced sufficient evidence to prove that he had solicited Van Alstine to aid and abet the commission of aggravated murder. In his brief to this court, defendant accepts the Court of Appeals' premise that proof of solicitation to aid and abet aggravated murder would suffice; his argument is that there was no evidence that he solicited Van Alstine to aid and abet that crime. In defendant's view,

> "[d]elivery of the DVD would not have promoted or facilitated a murder; at most, it is a thing that would have created animosity towards Piatt. Whether that animosity would have caused anyone to murder him would have been a decision made by the murderer, and the resulting crime would have been solely the crime of the murderer."

At best, defendant argues, the evidence showed that defendant solicited Van Alstine to solicit someone in the Outsiders to murder Piatt, which is not what the state charged.

The state responds that the trial court correctly denied defendant's motion for judgment of acquittal. According to the state, if Van Alstine had delivered the materials to the Outsiders and the Outsiders had murdered or assaulted Piatt, then Van Alstine would have been criminally liable for that crime as an accomplice because the delivery would have constituted aiding and abetting the murder. *See* ORS 161.155(2)(b) (one who aids or abets another person who commits a crime is criminally liable for that person's criminal conduct). By asking Van Alstine to engage in conduct that—in the state's view—would establish accomplice liability, defendant's conduct satisfied the statutory elements of solicitation.

As defendant frames it in his brief to this court, the issue before us is the sufficiency of the evidence to prove that defendant solicited Van Alstine to aid and abet the

aggravated murder of Piatt. To "aid and abet" means to advise, counsel, procure, or encourage another to commit a crime. *State v. Rosser*, 162 Or 293, 344, 91 P2d 295 (1939). To "abet" means "to countenance, assist, [or] give aid." *State v. Start*, 65 Or 178, 182, 132 P 512 (1913). Accordingly, evidence showing that defendant solicited Van Alstine to advise, counsel, procure, encourage, or countenance, assist, or give aid to someone else—in this case, the Outsiders—to commit aggravated murder is sufficient to establish that defendant solicited Van Alstine to commit aggravated murder.[5]

The record shows that defendant urged and entreated Van Alstine to deliver a DVD and a copy of an indictment to the Outsiders. Defendant even promised his car as payment for Van Alstine's delivery of the information. Defendant had explained to Van Alstine that the DVD and the indictment contained information showing that Piatt, one of the club's members, had cooperated with the police and that the Outsiders, upon receipt of that information, would "handle," "take care of," and "get rid of" Piatt, so that "Piatt would not testify" against him. The evidence shows that, within the Outsiders' milieu, such references meant assaulting or killing Piatt. In short, defendant solicited Van Alstine to assist or aid him in delivering information to the Outsiders that would cause the Outsiders to kill Piatt. If Van Alstine had delivered the information to the Outsiders, and if the Outsiders had responded to that information by killing Piatt, Van Alstine would have aided and abetted the killing. *See [State v. Lewis](#)*, 352 Or 626, 641-42, 290 P3d 288 (2012) (in determining whether state presented sufficient evidence to withstand motion for judgment of acquittal, court views evidence in light most favorable to state, resolves all conflicts in state's favor, and grants state benefit of all reasonable inferences that evidence supports).

---

[5] It could be argued that soliciting another person to aid and abet another in the commission of an offense does not establish the crime of solicitation, because a person who aids and abets does not *personally* "engage in specific conduct constituting a crime." ORS 161.435(1). Such an argument would draw a distinction between engaging in conduct that makes one criminally liable and conduct that actually constitutes a crime. As we have noted, however, defendant's argument on review assumes that proof of solicitation to aid and abet aggravated murder would be legally sufficient and asserts instead that the state failed to prove that, in fact, he solicited Van Alstine to aid and abet the offense of aggravated murder. Consequently, we limit our opinion to that issue.

That Van Alstine never delivered the information to the Outsiders is irrelevant. The crime of solicitation is complete upon the act of soliciting, regardless of what else does or does not transpire. As Professor LaFave explains, "[f]or the crime of solicitation to be completed, it is only necessary that the actor, with the intent that another person commit a crime, have enticed, advised, incited, ordered, or otherwise encouraged that person to commit a crime. The crime solicited need not be committed." Wayne R. LaFave, 2 *Substantive Criminal Law* § 11.1, 189 (2d ed 2003).[6] That is because the underlying rationale for the offense is that the solicitation itself is considered sufficiently dangerous to justify punishment, regardless of whether the solicitation is successful. Pertinent in that regard is the commentary to the Model Penal Code, on which the wording of ORS 161.435(1) was based:

> "Purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for liability. Moreover, the fortuity that the person solicited does not agree to commit or attempt to commit the incited crime

---

[6] Other jurisdictions are uniformly in accord with that basic principle. *See, e.g.*, *State v. Johnson*, 131 Ariz 299, 302 n 1, 640 P2d 861, 864 n 1 (1982) (Solicitation "requires no agreement or action by the person solicited, and *** is complete when the solicitor, acting with the requisite intent, makes the command or request."); *People v. Wilson*, 36 Cal 4th 309, 328, 114 P3d 758, 772 (2005), *cert den*, 547 US 1042 (2006) (Solicitation "is complete once the verbal request is made with the requisite criminal intent; the harm is in asking, and it is punishable irrespective of the reaction of the person solicited."); *People v. Ruppenthal*, 331 Ill App 3d 916, 920, 771 NE2d 1002, 1005, *rev den*, 201 Ill 2d 604 (2002), *cert den*, 540 US 813 (2003) ("The offense of solicitation is complete when the principal offense is commanded, encouraged or requested with the intent that it be committed."); *State v. DePriest*, 258 Kan 596, 604, 907 P2d 868, 874 (1995) ("The crime is complete when the person communicates the solicitation to another with the requisite mens rea. No act in furtherance of the target crime needs to be performed by either person."); *People v. Crawford*, 232 Mich App 608, 616, 591 NW2d 669, 673 (1998), *rev den*, 461 Mich 856 (1999) ("Solicitation is complete when the solicitation is made."); *Shaffer v. State*, 72 So 3d 1070, 1072 (Miss 2011) ("The act of solicitation does not require that the thing solicited even exists."); *State v. Lingmann*, 320 P3d 1063, 1071 (Utah App 2014) ("[T]he criminal offense of solicitation is complete the moment a defendant extends an offer.")

We note that ORS 161.435(1) uses the wording "commands or solicits"; it does not use LaFave's wording (enticed, advised, incited, ordered, or otherwise encouraged). We cite LaFave for the proposition that the requested act need not have occurred, but not as any particular construction of the statutory text of ORS 161.435(1).

plainly should not relieve the solicitor of liability, when otherwise he would be a conspirator or an accomplice."

American Law Institute, Model Penal Code § 5.02(1), 82 (Tentative Draft No. 10 1960); *see also* Kimberly Kessler Ferzan, *Inchoate Crimes at the Prevention/Punishment Divide*, 48 San Diego L Rev 1273, 1275 (2011) ("inchoate crimes *** are primarily aimed at preventing a harm").

The Oregon Criminal Law Revision Commission— which drafted what is now ORS 161.435(1)—confirmed its intention to reflect that policy in Oregon's statutory definition of the crime of solicitation. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 57 (July 1970).[7] Quoting from the commentary to the 1960 Model Penal Code, the Commission stated that "[p]urposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition toward criminal activity to call for liability." Commentary § 57 at 56. The Commission added that "the fortuity that the person solicited does not agree to commit or attempt to commit the incited crime plainly should not relieve the solicitor of liability." *Id*. To make the point, the Commission then explained by means of hypothetical that,

> "where A solicits B to commit a crime specified by A (or where A solicits B to solicit C to commit such crime), A's act constitutes the act of solicitation whether or not B (or C, as the case may be) actually commits the crime or attempts to commit the crime."

*Id.* (quoting Commentary to the Model Penal Code). In other words, the crime of solicitation is complete when the defendant engages in the act of soliciting, regardless of whether anything actually happens as a result of the solicitation.

For the same reason, the fact that there is no evidence that the Outsiders, upon receipt of the DVD and the indictment, actually would have killed Piatt is also beside

---

[7] It is common to refer to the Commentary as "part of the legislative history of the [1971 Criminal] Code." *See, e.g., State v. Chakerian*, 325 Or 370, 379, 938 P2d 756 (1997) (so stating). It is accurate to regard it as such in the sense that it is a document that was submitted to the legislature during the enactment process—albeit drafted by the Commission and not the legislature—and that the legislature undoubtedly took into account when it considered the bill that became the Oregon Criminal Code.

the point. Whether or not the Outsiders would have killed Piatt, the fact remains that the solicitation was complete at the moment that defendant asked Van Alstine to deliver the information for the purpose of causing the murder to occur.

We conclude that the trial court did not err in denying defendant's motion for judgment of acquittal.

The decision of the Court of Appeals and judgment of the circuit court are affirmed.