SHORR, J.
*231 Defendant appeals from a judgment of conviction, following a bench trial, for first-degree theft, ORS 164.055, and second-degree theft, ORS 164.045.[1] To convict a person of either first- or second-degree theft, the state must prove that the "market value" of the stolen item or items at the time and place of the crime exceeds certain monetary thresholds. ORS 164.115(1). Alternatively, the state may prove the replacement value of the item or items if that market value "cannot reasonably be ascertained." Id. Defendant argues that the trial court-acting as the trier of fact-erred when it relied on the replacement value of certain of the items stolen by defendant, because the state failed to prove that the market value of those items could not reasonably be ascertained.[2] Addressing that issue, we first conclude that, if the state points to evidence that a marketplace in fact exists for property but that the marketplace is unreliable, that may be sufficient evidence from which a reasonable trier *1063 of fact can find that the market value of the property "cannot reasonably be ascertained" under ORS 164.115(1). Based on that construction, we next conclude that, save for a few limited instances that had no effect on the verdict, the trial court either relied on the market value of the stolen items or properly determined that the market value could not reasonably be ascertained and relied on the replacement value of the stolen items. Further, there was sufficient evidence that the value of the property stolen by defendant exceeded the requisite monetary thresholds to support a conviction for first- and second-degree theft, respectively. Accordingly, we affirm.
I. FACTS AND PROCEDURAL HISTORY
The state charged defendant with first-degree theft for breaking into a car owned by victim NI, from which defendant stole a Helly Hansen jacket, a lightly used prototype Sunice jacket that had not yet been released to the *232 public, a laptop, an iPad, a backpack, word-processing software, several flash drives, and miscellaneous other items. The state also charged defendant with second-degree theft for breaking into a car owned by victim SH, from which defendant stole a climbing harness, several carabiners, and other outdoor gear.
At trial, the state elicited testimony from the two victims regarding the replacement values of each of the stolen items. Defendant presented testimony from Goodman, a valuation expert who provided market value estimates of many of the items, including the jackets, iPad, laptop, flash drives, and climbing harness and carabiners.[3] Goodman was unable to provide a dollar estimate for the word-processing software, but she did testify that the market for used software was unreliable. Goodman was not asked to provide an estimate of the market value of NI's stolen backpack. The state did not present its own valuation expert to address market values, although it did cross-examine Goodman to challenge the reliability of her estimates.
In reaching its guilty verdict, the trial court made a number of findings regarding the value of the stolen items. With respect to the charge of first-degree theft of NI's property (Count 1), the court relied on Goodman's market value estimates, with a five percent upward adjustment to reflect the higher value at the time of the crime, for the Helly Hansen jacket ($84), iPad ($315), laptop ($378), and flash drives ($31).[4] The court relied on NI's replacement value of $99 for the backpack because Goodman "didn't testify at all" about its market value. The court also relied on the $130 replacement value of the word-processing software provided by NI because, based on Goodman's testimony, "there just isn't any reliable marketplace" for used software. Finally, the court relied on the $279 replacement value of the Sunice jacket because it did not accept Goodman's $95 market value estimate and, additionally, concluded that "there isn't *233 a marketplace" for a used jacket that has not been released to the general public. The total value of those items as found by the court was $1,316.
With respect to the charge of second-degree theft of SH's property (Count 3), Goodman estimated that the combined market value of the harness and carabiners was $40. The trial court, however, relied on the $90 replacement value of the climbing harness because the court determined that the market value of used climbing gear could not reasonably be ascertained. For similar reasons, the court also relied on the $8 replacement value of the carabiners provided by SH, for a total of between $32 and $40.[5] The court *1064 found that the total value of those items taken from SH was between $122 and $130.[6]
II. ANALYSIS
Whether a defendant can be convicted of first- or second-degree theft depends on the total value of the items stolen. A charge of first-degree theft requires the total value of stolen property to equal or exceed $1,000. ORS 164.055 (1)(a). A charge of second-degree theft requires proof of at least $100 in stolen property. ORS 164.045(1)(b). Under ORS 164.115(1), "value means the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." Thus, the value of stolen property is typically the "market value," or "what a willing buyer will pay a willing seller." State v. G. L. D. , 253 Or. App. 416, 426, 290 P.3d 852 (2012), rev. den. , 354 Or. 597, 318 P.3d 749 (2013). Only if the market value "cannot reasonably be ascertained" may the court accept the replacement value in lieu of the market value. See id. ("[I ]f the market value of stolen property at the time of the theft cannot be reasonably ascertained, then its value can be established by the cost of replacement[.]" (Emphases added.) );
*234 State v. Langan , 54 Or. App. 202, 209-10, 634 P.2d 794 (1981), rev'd in part on other grounds , 293 Or. 654, 652 P.2d 800 (1982) ("[R]eplacement value may be used only if the fair market value of the property at the time and place of the crime cannot be ascertained." (Emphasis added.) ). The burden is on the state to prove the value of the stolen items. State v. Pulver , 194 Or. App. 423, 428, 95 P.3d 250, rev. den. , 337 Or. 669, 104 P.3d 601 (2004).
On appeal, defendant argues that the trial court erroneously relied on the replacement value of several of the stolen items where the state failed to first present legally sufficient evidence that the market value of the items could not reasonably be ascertained.[7] When, as here, a defendant's challenge to the legal sufficiency of the state's evidence "depends upon the meaning of the statute defining the offense," we review whether, based on the proper construction of the statute and viewing the evidence in the light most favorable to the state, "a rational factfinder could have found the elements of the offense beyond a reasonable doubt." State v. Holsclaw , 286 Or. App. 790, 792, 401 P.3d 262, rev. den. , 362 Or. 175, 406 P.3d 610 (2017).
Whether the record contains sufficient evidence from which the trial court, acting as trier of fact in this case, could infer that the market value of the word-processing software, backpack, Sunice jacket, and climbing harness and carabiners could not "reasonably be ascertained" presents, in part, a question of statutory construction. We construe statutes to determine the meaning that the legislature most likely intended. Id. at 794, 401 P.3d 262. To discern the legislature's intention, we examine the statutory text in context, as well *235 as any pertinent legislative history.[8] State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
Because "cannot reasonably be ascertained" is not defined by statute, we presume that the legislature intended each term within *1065 the phrase to have its plain and ordinary meaning. State v. Balero , 287 Or. App. 678, 682-83, 402 P.3d 739 (2017). We turn to the dictionary definitions of the individual terms as a source for that plain and ordinary meaning. See Holsclaw , 286 Or. App. at 796, 401 P.3d 262 (citing State v. McNally , 361 Or. 314, 321, 392 P.3d 721 (2017) ).
The term "reasonably" is defined as "in a reasonable manner" or "to a fairly sufficient extent." Webster's Third New Int'l Dictionary 1892 (unabridged ed. 2002). "Reasonable," in turn, is defined in relevant part as "being or remaining within the bounds of reason; not extreme; not excessive" and "well balanced : sensible." Id. ; see also Black's Law Dictionary 1455-56 (10th ed. 2014) (defining "reasonable" as "fair, proper, or moderate under the circumstances"). The term "ascertain" is defined as "to find out or learn for a certainty (as by examination or investigation) : make sure of : discover." Webster's at 126.
Taken together, those definitions indicate that the legislature intended to limit the conviction of defendants for theft based on evidence of the replacement value of the stolen item to those situations where, based on the evidence and argument presented by the state, the trier of fact finds or infers that the specific item's market value at the time and place of the crime cannot fairly be determined or discovered to a sufficient degree of certainty. As apparent from the statutory text, the legislature intended that, when determining the value of the stolen item, market value would be the default method and replacement value would be the fallback method. To rely on replacement value as the fallback the state must present evidence that it is not possible to ascertain market value to a reasonable certainty by an investigation that is reasonable under the circumstances. Any number of factors could permissibly lead the trier of fact to conclude that the market value "cannot reasonably *236 be ascertained," including the scope and reliability of the marketplace for the stolen item. With that understanding in mind, we turn to the trial court's factual findings regarding the value of the stolen items in this case and address whether the court, acting as trier of fact, erred by relying on replacement value for a number of those items.
A. Count 1-Theft in the First Degree
Defendant first argues that the trial court erred when it relied on the replacement value of NI's word-processing software, the Sunice jacket, and the backpack to reach the $1,000 threshold needed to convict defendant of first-degree theft under ORS 164.055. Turning first to the word-processing software, the trial court found that it had a replacement value of $130. When cross-examining Goodman, the state established that the second-hand market value of word-processing software is difficult to determine because "there's not really a reliable market" for used software discs. Goodman's testimony was not that there was no market value, but that the marketplace for used software was not reliable. In reaching its verdict, the court relied on Goodman's testimony to find that "there just isn't any reliable marketplace" and then determined that "the replacement value is the proper value." Given Goodman's recognition of a market but her inability to provide a "reliable" market value for the stolen software, and viewing the evidence in the light most favorable to the state, as we must, the court did not err when it relied on the replacement value.[9] A reasonable trier of fact may determine that an item's market value cannot reasonably be ascertained even if there is evidence of a known marketplace for the item if there is evidence that the marketplace is not sufficiently reliable to provide a valuation to a reasonable certainty. Among other reasons, the marketplace may be so small or erratic that a market price cannot reasonably be ascertained.
*237 Turning to the Sunice jacket, the trial court relied on the $279 replacement value provided by NI rather than the $95 market value estimate provided by Goodman. Even if it had accepted Goodman's market value estimate, *1066 the court would have found that the total value of items stolen from NI exceeded $1,000. As described above, the trial court accepted Goodman's market value estimates for the Helly Hansen jacket ($84), the iPad ($315), the laptop ($378), and the hard drives ($31), and relied on the replacement value for the software ($130), for a total of $938. Goodman testified that the market value of the Sunice jacket was $95. Added together, those values total $1,033. Even if we were to conclude that the trial court improperly valued the Sunice jacket because there was insufficient evidence that the market value could not reasonably be ascertained, the record still contains sufficient evidence to support defendant's conviction of first-degree theft. See State v. Hobbs , 218 Or. App. 298, 309, 179 P.3d 682, rev. den. , 345 Or. 175, 190 P.3d 1237 (2008) (explaining that we will not reverse based on an error that had little likelihood of affecting the verdict).
For similar reasons, even assuming that the trial court erroneously relied on a $99 replacement value for NI's stolen backpack, that error would not warrant a different result. As just described, the court found that the total value of the stolen items excluding the backpack was at least $1,033, which is greater than the $1,000 threshold for first-degree theft. See id.
Based on the foregoing, we conclude that the trial court did not commit harmful legal error when determining the value of the property stolen from NI. A reasonable factfinder could have found that the total value of the items stolen by defendant from NI exceeded $1,000 based on this record. Accordingly, the court did not err when it convicted defendant of first-degree theft.
B. Count 3-Theft in the Second Degree
Defendant also argues that the trial court erred when it relied on the replacement value provided by SH of the climbing harness ($90) and the carabiners ($32) to *238 reach the $100 threshold needed to convict defendant of second-degree theft under ORS 164.045.[10] SH was unable to testify about the used market value of those items because, as an experienced climber, he believed that a "very competent climber" would "never buy used [climbing] goods." In fact, SH laughed at the idea of buying used climbing gear and explained that, in the sport of climbing, it is necessary to understand the precise condition of the gear because the climber's life depends on it. Goodman, by contrast, estimated that the combined market value of the used climbing harness with carabiners was $40 and that those items were "perfect" for used marketplaces like eBay. Goodman's estimate was for a generic climbing harness with accessories, not for the specific model stolen from SH.
The trial court relied on the replacement value of the climbing harness and carabiners after describing the marketplace for novices to be for essentially "useless" used climbing gear and discounted Goodman's testimony because she could not testify to the value of the climbing gear in the condition it was in at the time it was stolen. That amounts to a predicate determination-supported by the evidence in the record when viewed in the light most favorable to the state-that the market value of the used climbing harness and carabiners cannot reasonably be ascertained, because the limited market that exists is for used climbing gear that is "useless" for its intended purpose. Once again, the trial court did not find that there was no marketplace or market value. Instead, it found that there was a limited and unreliable market for used climbing gear that could not reliably be sold for its designed function, protecting the safety of climbers, because the gear's degradation was not knowable. Thus, the court could not ascertain the market value to a reasonable certainty. That predicate finding allowed the court to turn to the replacement value of the climbing harness and carabiners, notwithstanding Goodman's market *239 value *1067 estimate for a generic used climbing harness with accessories on eBay.[11]
Viewing the evidence in the light most favorable to the state, the trial court, acting as trier of fact, could have found that the market value of the used climbing gear stolen from SH could not "reasonably be ascertained," ORS 164.115, and the record supports the replacement values assigned to those items by the court. Accordingly, we conclude that the court did not err when it determined that the total value of the items stolen by defendant from SH exceeded $100 and convicted defendant of second-degree theft on that basis.
Affirmed.

Defendant was also charged with and convicted for third-degree theft, ORS 164.043, and possession of methamphetamine, ORS 475.894. Defendant does not assign any error with respect to those convictions.

In a supplemental brief filed pro se , defendant raises additional assignments of error that we reject without written discussion.

Goodman did not provide a separate valuation of the market value of the climbing harness as distinct from the carabiners. Rather, she testified to her estimate of the combined value of the harness "with carabiners."

Goodman estimated that the market value of the stolen items at the time of the crime would have been between five percent and 10 percent higher than her estimates at the time of trial.

The trial court found the total value of the carabiners to be $28. That value appears to be the result of an arithmetic error. The court found that four carabiners were recovered, although the record reflects that five may have been recovered. At $8 each, the correct total was either $32 or $40. We assume that the court intended to rely on the arithmetically correct value.

The court made no findings on the record as to the value of the other items stolen from SH.

Defendant argues that the trial court "incorrectly applied the law in making its findings of fact and reaching its verdict, an error which is analogous to the jury being given erroneous instructions in a jury trial," and would have us review accordingly. Defendant further argues that he preserved that particular issue because he argued in closing at trial that "the replacement value * * * may not be used to value property unless there's affirmative evidence that the fair market value of the property at the time and place of the crime could not be reasonably ascertained. * * * And that's not the situation here, as there's been expert testimony that a fair market value can be determined for all the items in this case." As the state argues on appeal, defendant's argument at trial and on appeal is properly seen as a challenge to the sufficiency of the evidence-specifically that the state failed to present sufficient evidence from which the court could determine that it was appropriate to rely on replacement value rather than market value. We accept the state's view of defendant's arguments and review accordingly.

In this case, legislative history does not provide any insight into the meaning of the phrase "cannot reasonably be ascertained" in ORS 164.115(1).

We note that the trial court also stated that "there is not a market for the software." Defendant argues on appeal that that amounts to a finding by the court that the software disc was valueless at the time of the theft. We disagree. The court clarified its statement immediately by finding that the market for used word-processing software was unreliable.

The trial court mistakenly stated that, based on SH's estimate, the replacement value of the harness was $99. In fact, SH testified that the harness had a replacement value of $90. We assume that the court intended to adopt that value quoted by SH. That discrepancy has no effect on whether the total value of the stolen items exceeds the $100 threshold needed to convict defendant of second-degree theft under ORS 164.045.

On appeal, defendant acknowledges that the trial court was not required to accept Goodman's market value estimates of the stolen property.