Submitted February 25; conviction on Count 1 reversed and remanded for entry of a judgment of conviction for theft in the third degree, remanded for resentencing, otherwise affirmed April 21, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TREVOR WILLIAM SLATER,
*Defendant-Appellant.*

Douglas County Circuit Court
18CR83445; A172012

487 P3d 59

Defendant appeals from a judgment of conviction, following a bench trial, for aggravated theft in the first degree, ORS 164.057, and unlawful entry into a motor vehicle, ORS 164.272. To convict a person of aggravated theft in the first degree, the state must prove that the stolen property had a value of $10,000 or more. That value is established by "the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." ORS 164.115(1). On appeal, defendant argues that the trial court erred in concluding that the market value of the stolen items was not reasonably ascertainable and in relying on evidence of replacement value. *Held*: The trial court erred in concluding that the market value of the stolen items could not be reasonably ascertained, and in concluding that it had an adequate basis to use replacement values to establish that the stolen property was worth at least $10,000.

Conviction on Count 1 reversed and remanded for entry of a judgment of conviction for theft in the third degree; remanded for resentencing; otherwise affirmed.

William A. Marshall, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Daniel Norris, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Conviction on Count 1 reversed and remanded for entry of a judgment of conviction for theft in the third degree; remanded for resentencing; otherwise affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction, following a bench trial, for aggravated theft in the first degree, ORS 164.057, and unlawful entry into a motor vehicle, ORS 164.272. To convict a person of aggravated theft in the first degree, the state must prove that the stolen property had a value of $10,000 or more. ORS 164.057. That value is established by "the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." ORS 164.115(1). Here, the trial court concluded that the market value of the stolen items was not reasonably ascertainable and instead relied on evidence of replacement value. On appeal, defendant first argues that the court erred in doing so, and in denying his resulting motion for judgment of acquittal on the theft charge, because that evidence of replacement value was insufficient to prove that the stolen property was worth more than $10,000. Defendant next argues that the court plainly erred in not entering a judgment of acquittal because the state failed to prove that defendant was criminally negligent regarding the value of the items stolen. We agree with defendant's first argument and reject the second. As a result, we reverse the judgment as to Count 1 and remand for entry of a judgment of conviction for theft in the third degree.

When reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether the state presented sufficient evidence from which a rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019). We recite the facts consistently with that standard of review.

In December 2018, victims C and T had just returned from a family vacation and arrived home around 1:00 a.m. C decided to leave the family's suitcases in their SUV and left the vehicle unlocked. The next morning, many of their suitcases were missing. The victims reported the theft to the Douglas County Sheriff's Office. The luggage

contained mostly clothing, but also some personal items such as electric toothbrushes and razors, and two laptops, including one MacBook. The victims remotely activated an "iCloud link system" on the MacBook that alerted them to its GPS location. They provided the GPS information to Deputy Williams, who arrived at the location—a parking lot—minutes later. There were only two vehicles in the lot, and one had a suitcase visible in the back seat. Defendant and his girlfriend were sitting in that vehicle. Defendant admitted to entering the victims' SUV and stealing luggage, and deputies recovered some of the stolen property from defendant. Defendant was arrested and charged with theft in the first degree, ORS 164.055, a Class C felony, and unlawful entry into a motor vehicle, ORS 164.272, a Class A misdemeanor. A few days later, the theft charge was increased to aggravated theft in the first degree, a Class B felony requiring that the state prove that the stolen property had a value of $10,000 or more. ORS 164.057.

The case proceeded to a bench trial in July 2019. There, the victims presented an itemized property list of the stolen items in the form of a spreadsheet containing 157 line items. The victims also testified about some of the stolen items.[1] The property list included several souvenirs and Christmas gifts that had been purchased on the vacation and that were relatively new at the time they were stolen. For instance, C testified that the luggage contained a blue Invicta watch that had been purchased days before the theft. Other items, such as articles of men's clothing from REI and an Adrianna Papell bridesmaid dress, were purchased right before the family left on vacation, had only been worn once, and had never been laundered. Many of the items had been purchased new in the preceding months and years before the theft. In discussing the stolen clothing, T testified that "[m]ostly everything was new to up to maybe two years old for my kids or myself." For example, articles of Matilda Jane clothing were less than three months old at the time of the

---

[1] The vast majority of the stolen items were never individually discussed or described during the trial testimony. Outside of a few select items and brands, most of the testimony discussed the stolen items in general terms. For those items that were never individually discussed via testimony, the itemized property list admitted as State's Exhibit 12 was the only evidence describing those items.

theft. A white suitcase had been purchased five months before the theft. A silver Armani watch had been purchased "within a year." Several pairs of Lululemon leggings were purchased new "within the year" or "up to 18 months" before the theft. Other items were older. For instance, a Dakine duffel bag embroidered with the insignia of C's old wrestling team was decades old. Overall, however, the victims testified that most of the items were in "[v]ery good and almost new condition."

The state presented evidence to prove that the stolen luggage and its contents had a combined value of $14,411.90. That evidence was admitted through the itemized property list prepared by the victims, which meant to express the value of the stolen goods via a column titled "Replacement Value." C testified that the couple created the list as part of an insurance claim that was never filed. T provided the principal testimony regarding how the replacement values had been determined:

"Q.   *** So how did you come to *** the replacement values on this list?

"A.   Well, being a Roseburg resident, I shop online a lot because we don't have a lot of options. *** I have electronic receipts for a lot of my items. If I didn't have an electronic receipt or a physical receipt, I did a web search to try to buy the item again today and what would it cost me to do that.

"Q.   And were you looking for used, used versions of stuff, as well as new versions of stuff?

"A.   I mean I mostly looked at it from the frame of if I were to replace my thing that I need again what would it cost. If there was years of wear on something, I think I would have used that or taken that into consideration.

"Q.   Okay.

"A.   I tried to be fair about it. But mostly, I looked at it from the point of if I were to buy this again for myself what would I pay."

Because the family's MacBook laptop had been purchased in a "newly refurbished" condition, the replacement value for that item referenced another certified refurbished laptop.

T was asked about the Dakine duffel bag that had been embroidered for C's old wrestling team:

> "Q.   —wrestling. So how did you come to the value for that item, specifically?
>
> "A.   I found a comparable Dakine duffel bag, a new bag. So of course, if you were to buy a new bag, it would be newer. So it would have more value. But it wouldn't be custom insigne. So I guess you would lose some value there. So I just tried to find a replicable item to replace it right now."

T testified further regarding how she arrived at the values in the spreadsheet generally:

> "Q.   But did you do your best to look at fair market value?
>
> "A.   I mean I guess it would depend on the item. But I, the lens that I created this with at the time was if I were to go and buy it again right now.
>
> "Q.   Okay.
>
> "A.   And I don't buy used clothing. So I wouldn't go and replace it with used clothing."

The trial court asked T about the used clothing market specifically:

> "Q.   *** For used clothing, can you tell by, the quality of the used clothing by looking online?
>
> "A.   The quality of used clothing, I mean—
>
> "Q.   How, how worn it is.
>
> "A.   I guess to some extent but—
>
> "Q.   And, and is there a market for used clothing for much of the—
>
> "A.   Actually, yes. So a lot of these brands, Matilda Jane, Lululemon and a lot of them that we're talking about, there is a resale market value. So you can find groups on Facebook, for example, where people sell them maybe at 50 to 60 percent of retail. So there is some, yes, aftermarket on a lot of these brands.
>
> "Q.   And, and did you take—
>
> "A.   And eBay. And you could do that too.

"Q. Did you take that into consideration when you were setting these values?

"A. I looked at my own receipts and what I paid for or that I would need to replace my item. I don't shop used, so I didn't put used items on this list."

T was later recalled and questioned further regarding the used clothing market:

"Q. Okay. Now, when you're buying those items for 50, for 50 or 60 percent off through whatever venue, and that would be eBay, Facebook Marketplace or whatever the case may be, would those items be in new condition?

"A. No.

"Q. Would they be in like new condition?

"A. No.

"Q. Would they be replacements for what you have lost?

"A. No. My items were much newer than the items that would be for sale at that reduced rate."

T further confirmed that there were secondary markets for vintage designer clothing and like-new clothing that had only been worn once or twice.

At the close of the evidence, defendant moved for a judgment of acquittal on the aggravated theft charge, arguing that the state had failed to present sufficient evidence of the $10,000 value element. Specifically, defendant argued that the state had not established that the fair market value for the stolen property was not reasonably ascertainable, and that therefore the state could not rely on replacement value to prove the value element. The state responded that the victims' testimony and itemized spreadsheet were sufficient evidence of the $10,000 value element and that reference to replacement value was appropriate in this case. The state argued that

"[t]he testimony from the witness was that the items that are available on those resale markets are not equivalent items. That the items that are sold on those resale markets are not the same as the items that were stolen from her. So we don't believe that there is that secondary market

that exists. And so we do believe that replacement value is appropriate."

The court denied defendant's motion, stating:

"[T] described that these items, although * * * they might be available on eBay or some other online source in a used condition, that one cannot rely that they are, would be in the similar condition. And, and they would be unable to ascertain that, perhaps, online as to what the condition was of these items. And, and thus, the value of the items, without having been in hand.

"* * * * *

"And here, the testimony is that these are like new items. That the victims in this case attempted to ascertain the value. They have, for many of the items, original receipts, either electronic or paper copies. And, * * * you can't, I don't know how one would determine the condition of clothing items without having it in your hand to ascertain what the condition of that * * * online source or the, of a used item would be without having it in your hand.

"There is no ready local market. The testimony was there is no local market for the kinds of items that are here, either new or used. And so I think that the State has shown, to the level required, that there is no way to reasonably ascertain the market value of the items that were taken. And so replacement cost is what you rely on. There is testimony certainly sufficient to take it over the $10,000 threshold here."

Defendant was convicted as charged. This timely appeal followed.

Defendant assigns error to the trial court's denial of his motion for judgment of acquittal on the aggravated first-degree theft charge. Repeating the argument that he raised in the trial court, defendant asserts that the state presented insufficient evidence to establish that the fair market value of the stolen property was not reasonably ascertainable. Thus, "the state could not rely on replacement value" and, therefore, failed to present sufficient evidence that the stolen property was worth at least $10,000. The state makes two arguments in response. First, referencing *State v. G.L.D.*, 253 Or App 416, 426, 290 P3d 852 (2012), *rev den*,

354 Or 597 (2013), the state argues that it did indeed submit sufficient evidence of the fair market value of the stolen items, because "the original or replacement cost of property, coupled with other contextual information" may be used to determine market value. Second, the state argues that, even if the evidence was insufficient to establish fair market value, it was nonetheless sufficient to show that fair market value was not reasonably ascertainable.

We turn to our analysis of the relevant law. To prove that the stolen property had a value of $10,000 or more, the state had to establish that amount by evidence of "the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." ORS 164.115(1). Market value is "'what a willing buyer will pay a willing seller.'" *State v. Mays*, 294 Or App 229, 233, 429 P3d 1061 (2018), *rev den*, 364 Or 407 (2019) (citing *G. L. D.*, 253 Or App at 426). In other words, market value is the price at which the property could have been sold at the time and place it was stolen. *State v. Callaghan*, 33 Or App 49, 58, 576 P2d 14, *rev den*, 284 Or 1 (1978) (in the context of property stolen from a wholesaler, "the price at which the wholesaler offers to sell it ordinarily reflects its market value"). Alternatively, the value of stolen goods may be determined by the cost to replace those goods. But use of that metric is strictly limited. "To rely on replacement value as the fallback[,] the state must present evidence that it is not possible to ascertain market value to a reasonable certainty by an investigation that is reasonable under the circumstances." *Mays*, 294 Or App at 235. Various factors may create a situation where it is not possible to reasonably ascertain market value:

"A reasonable trier of fact may determine that an item's market value cannot reasonably be ascertained even if there is evidence of a known marketplace for the item if there is evidence that the marketplace is not sufficiently reliable to provide a valuation to a reasonable certainty. Among other reasons, the marketplace may be so small or erratic that a market price cannot reasonably be ascertained."

*Id*. at 236.

We first consider the state's argument that it presented sufficient evidence of the fair market value of the stolen items, because "the original or replacement cost of property, coupled with other contextual information" may be used to determine fair market value. In so arguing, the state refers us to *G. L. D.*, where we concluded that the trial court properly considered evidence of replacement value as a factor in determining market value. 253 Or App at 426.

That is not what happened here, however. Defendant moved for a judgment of acquittal, arguing that the state had not met its burden to show that the market value of the stolen goods was not reasonably ascertainable, and that reliance on replacement value was thus impermissible. In response, the state never articulated that defendant misunderstood the role of the replacement value evidence. Instead the state argued that

> "[t]he testimony from the witness was that the items that are available on those resale markets are not equivalent items. That the items that are sold on those resale markets are not the same as the items that were stolen from her. So we don't believe that there is that secondary market that exists. *And so we do believe that replacement value is appropriate*."

(Emphasis added.) Finally, the trial court was clear that it was not attempting to evaluate market value and was instead turning to "the fallback" method for proving value: "[T]he State has shown, to the level required, that there is no way to reasonably ascertain the market value of the items that were taken. And so replacement cost is what you rely on." In effect, the state's argument asks us to affirm the case as "right for the wrong reason" without providing us with an argument as to why it is appropriate for us to do so. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (discussing conditions that must be met for reviewing court to affirm on an alternative basis); *State v. Shields*, 309 Or App 516, 526, 482 P3d 784 (2021) (declining to consider the state's proffered alternative basis to affirm when it neither addressed the *Outdoor Media Dimensions Inc.* conditions nor explained why this court should exercise its discretion). In any event, we decline to exercise our discretion to affirm on that alternative basis

because the record might have developed differently had the state raised that issue below. *See Outdoor Media Dimensions Inc.*, 331 Or at 659-60 (requiring that the record must be materially the same as what would have developed had the alternative basis been raised below).

We turn to the question of whether the trial court's reliance on replacement value was supported by sufficient evidence. As we explained earlier, reliance on replacement value is only appropriate when "it is not possible to ascertain market value to a reasonable certainty by an investigation that is reasonable under the circumstances." *Mays*, 294 Or App at 235. Market value in this case would have been what a prospective buyer would have been willing to pay to purchase the victims' clothing, personal items, electronics, and other assorted items at the time and place of the crime, when each item was anywhere from relatively new to decades old. The court heard that the victims had purchased nearly all the items in new condition at various points over the previous days, months, and years, and that many of the items were in very good or almost new condition. The court also heard that some of the brands at issue were resold at "50 to 60 percent of retail," but that the victims did not purchase used clothing. T added that items available at that reduced rate would not be as new or in as good condition as the stolen items. Finally, T testified that people did resell like-new used clothing.

Even considering that evidence in the light most favorable to the state, the trial court erred by utilizing replacement value because there was insufficient evidence to conclude that market value was not reasonably ascertainable. The state did not reasonably investigate the market value of the items when stolen, particularly the vast majority of items that were not brand new. The victims, who presented the only evidence of value in this case, testified that they did not investigate the market value of their used items:

"Q.  But did you do your best to look at fair market value?

"A.  I mean I guess it would depend on the item. But I, the lens that I created this with at the time was if I were to go and buy it again right now.

"Q.    Okay.

"A.    And I don't buy used clothing. So I wouldn't go and replace it with used clothing."

The victims only investigated the cost of new replacements, because they did not desire comparable used replacements, not because there was no market for such comparable items. Even crediting T's testimony that used clothing that sold for 50 to 60 percent of retail was not of comparable quality to the stolen items, T later agreed that there was a secondary resale market for clothing that had only been worn once or twice. That testimony illuminated that a segment of the used clothing market existed that consisted of higher quality or like-new pieces that would presumably be in the same or perhaps even better condition than many of the stolen items. But there was no evidence presented as to why that like-new segment of the used clothing market should not be used as a basis for determining market value.

Those facts distinguish this case from *Mays*. In *Mays*, we concluded that there had been sufficient evidence for the trial court, sitting as factfinder, to use replacement value in valuing used climbing gear. 294 Or App at 239. Evidence was presented that, despite the existence of a used climbing gear resale market, competent climbers never purchased used climbing gear because of the difficulty of assessing the gear's condition and the safety risks presented. *Id*. at 238. We concluded that there had been sufficient evidence for the court to use replacement value, because "there was a limited and unreliable market for used climbing gear that could not reliably be sold for its designed function, protecting the safety of climbers, because the gear's degradation was not knowable." *Id*. That was sufficient to establish that the market value of the gear could not reasonably be ascertained. *Id*. at 238-39.

Here, there was no evidence from which the trial court could have disregarded the like-new used clothing market as "limited" or "unreliable," because the court had no evidence of that market other than the fact that it existed. And, to the extent that the court relied on its conclusions that there was "no ready local market" and that the online used clothing market was unreliable because one could not

"determine the condition of clothing items without having it in your hand," those conclusions were not supported by the evidence. T testified that there was a market for like-new clothing, and that one could tell the quality of used clothing sold online at least "to some extent." Absent evidence that the state had made a reasonable investigation into what the stolen items would have been valued on the marketplace at the time and place of the crime, the court erred in concluding that the market value of the stolen items was not reasonably ascertainable.

We must affirm a judgment, despite any error committed at trial, if there is little likelihood that error affected the verdict. *State v. Lachat*, 298 Or App 579, 589, 448 P3d 670 (2019), *rev den*, 366 Or 257 (2020). Despite the fact that the state presented evidence that the stolen items had a replacement value of $14,411.90, the market values for the stolen items may have been ascertainable, and those market values may have failed to total at least $10,000. The trial court's error was therefore not harmless.

Defendant raises a second and unpreserved argument that the state failed to present sufficient evidence that defendant had a culpable mental state as to the value of the stolen property. Requesting plain-error review, defendant argues that the state must prove that a defendant was at least criminally negligent as to the value of stolen property, because value is a material element of theft, and, under ORS 161.095(2), a person must act with a culpable mental state with respect to each material element. Defendant acknowledges that this case is controlled by *State v. Morales*, 299 Or App 392, 450 P3d 552 (2019), *rev den*, 366 Or 293 (2020), in which we, relying on *State v. Jones*, 223 Or App 611, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009), rejected that same argument. As in *Morales*, we decline defendant's invitation to overrule *Jones* and its progeny. We also note that we considered and rejected a similar argument—the argument that *Jones* is not incompatible with a requirement that the state prove criminal negligence with respect to value—in a different case in the time since defendant filed his opening brief. *State v. Stowell*, 304 Or App 1, 8-12, 466 P3d 1009 (2020). We adhere to those cases here.

We now turn to the issue of what result is appropriate on remand. To summarize, the state failed to present sufficient evidence for the trial court to conclude that the market value of the stolen items could not be reasonably ascertained, and the court did not have an adequate basis to use replacement values to establish that the stolen property was worth at least $10,000. Accordingly, the court erred when it denied defendant's motion for judgment of acquittal on Count 1. However, we have authority under Article VII (Amended), section 3, of the Oregon Constitution[2] to direct entry of a lesser-included offense that we determine should have been entered by the trial court—in other words, where there is insufficient evidence to support the defendant's conviction for the charged offense, but where the state proved all the elements of a lesser-included offense that is subsumed in the charged offense. *State v. Pittman*, 276 Or App 491, 494-95, 369 P3d 99 (2016); *see also State v. Madison*, 303 Or App 737, 743, 466 P3d 92 (2020) (remanding for entry of attempted promoting prostitution following reversal of trial court's denial of a motion for judgment of acquittal as to promoting prostitution); *State ex rel Juv. Dept. v. H. S.*, 237 Or App 385, 390, 239 P3d 999 (2010) (remanding for entry of third-degree theft following reversal of juvenile court's denial of a motion for judgment of acquittal as to second-degree theft where state did not prove value element of charged crime).

Although the parties do not address on appeal whether defendant should be convicted of some lesser-included offense, the record and evidence readily support the conclusion that the state proved every element of the charged offense except the value element. Aggravated first-degree and first-degree theft are no different from the lesser-degree theft offenses at issue in *H. S.* in that they differ only in the value of the stolen property at issue. *See State v. Waterhouse*, 359 Or 351, 359, 373 P3d 131 (2016) (comparing

---

[2] Article VII (Amended), section 3, provides, in part:

"[I]f, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court."

theft offenses).[3] Therefore, we may direct entry of a lesser-degree theft conviction here, if the state indeed proved all the elements of that offense. However, the state's erroneous use of replacement value makes it impossible for us to say, without relying on impermissible speculation, whether the stolen property in this case met the particular value thresholds for first- or second-degree theft. The state must prove stolen property had a total value of $1,000 or more to convict for first-degree theft, or $100 to $1,000 to convict for second-degree theft. ORS 164.055(1)(a); ORS 164.045(1)(b). Here, the only evidence of value for many of the stolen items was the replacement value listed in the itemized spreadsheet, with no evidence of the specific age of the items, their condition, or their depreciation since purchase, if any. And, even when certain items were described in greater detail via testimony, there was still no evidence from which one could determine whether those items had fully retained the market value they possessed when first purchased. Such evidence is insufficient to prove the value element of either first- or second-degree theft, absent significant speculation. At the time of defendant's crimes, ORS 164.115(5) directed that, if the precise value of stolen property could not be reasonably ascertained, the property was presumed to have a value of less than $50. ORS 164.115(5) (2017), *amended by* Or Laws 2019, ch 399, § 5 (amended to presume an increased value of "less than $100"). Applying that presumption, the state presented sufficient evidence to support defendant's conviction for theft in the third degree, or theft of property having some value less than $100. *See* ORS 164.043(1)(b) (value of property must be "less than $100"); *Waterhouse*, 359 Or at 360 (at minimum property must have "some value," although exact worth immaterial). Therefore, we reverse and remand for entry of a judgment of conviction for the lesser-included offense of theft in the third degree, ORS 164.043.

Conviction on Count 1 reversed and remanded for entry of a judgment of conviction for theft in the third degree; remanded for resentencing; otherwise affirmed.

---

[3] We acknowledge that ORS 164.055 provides for several alternative forms of first-degree theft that do not conform to this generalization, including, for example, theft of a firearm. ORS 164.055(1)(d). However, those alternative forms of first-degree theft are irrelevant to the facts of this case, and we therefore omit them from our discussion.