No. 652 July 23, 2025 95

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE BENJAMIN RICHARDSON,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR47980; A181473

Bryan B. Francesconi, Judge.

Argued and submitted June 24, 2025.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Baylee Seeman, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded for entry of a judgment of conviction for theft in the third degree.

**TOOKEY, P. J.**

Defendant appeals a conviction for attempted second-degree theft entered after a bench trial. The state charged defendant after he attempted to steal a catalytic converter from a Toyota Prius in a parking garage. In his sole assignment of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) because, he argues, "the record contained no evidence regarding the market value of the catalytic converter that defendant attempted to steal." Even viewing the evidence in the light most favorable to the state, we conclude that the evidence was legally insufficient to reasonably infer that the market value of the catalytic converter was $100 or more, and that the state did not establish that the market value of property "cannot reasonably be ascertained." *State v. Mays*, 294 Or App 229, 235-36, 429 P3d 1061 (2018), *rev den*, 364 Or 407 (2019) (internal quotation marks omitted). We reverse defendant's conviction and remand.

In reviewing a trial court's denial of an MJOA, we view "the evidence in the light most favorable to the state to determine if the state presented sufficient evidence from which a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (internal quotation marks omitted).

In this case, the key element of attempted second-degree theft is that the property subject to the attempted theft must have had a value of "$100 or more." ORS 164.045(1)(b). "[V]alue means the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." ORS 164.115(1). "[M]arket value is the price at which the property could have been sold at the time and place it was stolen." *State v. Slater*, 310 Or App 746, 754, 487 P3d 59 (2021). Determining market value is the "default method," while "replacement value" is the "fallback method" and is to be used only after the state has proven that the market value of property "cannot reasonably be ascertained." *Mays*, 294 Or App at 235-36 (internal quotation marks omitted).

Here, in addressing defendant's argument, we focus on the following testimony from the sergeant who responded to the incident:

"Q:   Do you know how much a catalytic converter costs?

"A:   I have an idea and I know the prices can vary.

"* * * * *

"Q:   Sergeant ***, about how much are catalytic converters, based on your training and experience?

"A:   Like I said, my experience in my training, they vary. It could be 500 bucks. It could be up to 1,000. I've heard of them being well over $1,000 to be fully replaced on a car."

After the state's presentation of evidence, defendant sought acquittal on several grounds, including the state's failure to prove that the market value of the Prius's catalytic converter exceeded $100. The trial court denied the MJOA ruling that "[t]here has been testimony in the record that the market value for catalytic converters in the open market can be somewhere between 500 and $1,000."

On appeal, defendant renews his argument that the sergeant's testimony was insufficient to support a conclusion that the market value of the property was $100 or more. We agree. Even viewing the sergeant's testimony in the light most favorable to the state, it does not establish the market value of the catalytic converter that defendant was attempting to steal, or, in other words, "the price at which the property could have been sold at the time and place it was stolen." *Slater*, 310 Or App at 754. The sergeant's testimony was about catalytic converters in general, not this specific type of catalytic converter. The state did not elicit further testimony from the sergeant that could have shed light on "the market value of *the property at the time and place of the crime*." ORS 164.115(1) (emphasis added). Without additional information, we think the sergeant's statement, set forth above, that catalytic converters could cost between $500 and $1,000 was too general to permit a reasonable inference that this specific catalytic converter could have been sold for $100 or more. Indeed, there is no information in the record about the age or condition of this specific catalytic converter or the impact that could have on its market value.

The sergeant's next statement expressly pertained to the replacement cost of catalytic converters: "I've heard of them being well over $1,000 to be fully replaced on a car." We recognize that replacement costs can be a factor in determining the market value of an item. For example, in *State v. G. L. D.*, 253 Or App 416, 426, 290 P3d 852 (2012), *rev den*, 354 Or 597 (2013), we determined that ORS 164.115(1) did not prevent the trial court from considering the cost of replacement computers as a factor in determining the market value of stolen computers. In *G. L. D.*, the evidence was sufficient for the trial court to conclude that the market value of 19 stolen computers exceeded $10,000, because there was evidence that replacement computers, which were an upgraded but similar model, cost approximately $28,000, and the stolen computers, which were a discontinued model, were just one year old. *Id.* at 427-28. There was testimony that the replacement computers were actually less expensive than the purchase price of the stolen computers. *Id.* at 428. "The court did and was entitled to conclude from all of the evidence that the fair market value of the one-year old stolen computers exceeded $10,000, approximately one-third of their price when new." *Id.*

Here, by contrast, the sergeant's statement about replacement cost is simply insufficient to conclude that the market value of this specific catalytic converter was $100 or more. When the sergeant testified that he had "heard of them being well over $1,000 to be fully replaced on a car," we do not know the specific type of catalytic converter he was referring to or the kind of vehicle. There was no evidence that the catalytic converters the sergeant had in mind and this specific type of catalytic converter were "similar in ways relevant to their effectiveness or utility; there was no evidence that they were equivalent in ways relevant to their value." *State ex rel. Juv. Dept. v. H. S.*, 237 Or App 385, 390, 239 P3d 999 (2010). Therefore, we determine that the trial court could not reasonably infer from the sergeant's statement about replacement costs that this catalytic converter had a market value of $100 or more.

The state also argues that the sergeant's testimony was sufficient to support a determination that the

replacement value of the catalytic converter was greater than $100. However, as we explained in *Slater*, 310 Or App at 754, "use of that metric is strictly limited" to situations in which "it is not possible to ascertain market value to a reasonable certainty[.]" For example, in *Mays*, we concluded there was sufficient evidence for the trial court to use the replacement value of used climbing gear because competent climbers never purchased used climbing gear because of the difficulty of assessing the gear's condition and the safety risks presented. 294 Or App at 238. But here, the state made no attempt to show that the market value of the catalytic converter was unascertainable and that it was entitled to rely on replacement value in lieu of market value. We conclude that the trial court erred in denying defendant's MJOA.

Defendant contends that, if we agree with his argument that the trial court erred in denying his MJOA, we should remand for entry of a judgment of conviction for one count of attempted third third-degree theft. We agree that that is the proper disposition.

Reversed and remanded for entry of a judgment of conviction for theft in the third degree.