100 July 23, 2025 No. 653

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHADWICK L. PHILLIPS,
aka Chadwick Lawrence Phillips,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR20991; A181633

Heidi H. Moawad, Judge.

Argued and submitted June 24, 2025.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction raising seven assignments of error. Defendant was caught loading a steel workbench and storage rack into his truck. The two items had been left outside the victim's machine shop. Defendant was charged with first-degree theft, ORS 164.055. During trial, defendant moved for a judgment of acquittal (MJOA), which the trial court denied. The jury found defendant not guilty of first-degree theft, but guilty of the lesser-included offense of second-degree theft, ORS 164.045. Having reviewed the record and each of defendant's assignments of error, we affirm.

On appeal, in his first and second assignments of error, defendant argues that the trial court erred when it denied his MJOA and when it entered a conviction for second-degree theft, contending that the evidence did not permit a nonspeculative inference that the steel workbench and rack were worth $100 or more. Defendant also argues that the trial court erred in relying on the replacement value of the property.

Assuming without deciding that those arguments are preserved, we do not think that they have merit. When reviewing the denial of an MJOA, we view "the evidence in the light most favorable to the state to determine if the state presented sufficient evidence from which a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (internal quotation marks omitted).

The value of stolen property means "the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." ORS 164.115(1). Market value is "'what a willing buyer will pay a willing seller.'" *State v. Mays*, 294 Or App 229, 233, 429 P3d 1061 (2018), *rev den*, 364 Or 407 (2019) (quoting *State v. G. L. D.*, 253 Or App 416, 426, 290 P3d 852 (2012), *rev den*, 354 Or 597 (2013)). In other words, "market value is the price at which the property could have been sold

at the time and place it was stolen." *State v. Slater*, 310 Or App 746, 754, 487 P3d 59 (2021). Alternatively, the value of stolen goods may be determined by the cost to replace them rather than by their market value. "To rely on replacement value as the fallback the state must present evidence that it is not possible to ascertain market value to a reasonable certainty by an investigation that is reasonable under the circumstances." *Mays*, 294 Or App at 235. However, courts may also consider the cost of replacing stolen items as a factor in determining their fair market value. *G. L. D.*, 253 Or App at 426.

Here, the workbench and rack had been left outside for over "three and a half years," and they were rusty. Nevertheless, the victim, B, testified that he "was not getting rid of the items." He testified that the steel workbench was "professionally made," and that the rack was "custom made." B owned the machine shop since 2002, and he had experience working with steel. B expressly testified that "if you wanted to buy them we may agree on a price of 1,200." B estimated that the cost of the steel to build the workbench was $1,000 to $1,500, and that the cost of the steel to build the rack was $200 to $400. B explained that if he bought steel that had rust on it, "it's usually at a steep discount," but he also testified that "[i]f I took that bench and I clean it up and I make it look really nice and I paint it[,] it's gonna be worth a whole lot more than if it has rust on it."

In so testifying, it was not always clear whether B was referring to the market value of the workbench and rack or how much it would cost to build replacements. But viewing the evidence in the light most favorable to the state, it was legally sufficient to deny the MJOA. It was reasonable for the trial court to view B's testimony as about market value because B recovered the items. As a result, there was no need for B to testify about replacement costs. And even if B was talking about the cost of steel to build replacements, replacement costs can be a factor in determining the fair market value of an item. *G. L. D.*, 253 Or App at 426.

In arguing otherwise, defendant relies on *Slater*, but his reliance on that case does not advance his argument because, in *Slater*, the state expressly argued about

the replacement value of stolen items and the trial court expressly relied on the fallback method of replacement costs. 310 Or App at 755. Here, by contrast, viewing B's testimony in the light most favorable to the state, he was testifying about the fair market value of the workbench and the rack, or about how much he would have been willing to sell the items for if they had been for sale, not their replacement value. Because the evidence was legally sufficient for the question of the market value of the workbench and rack to go to the jury, we reject defendant's first two assignments of error.

In his third assignment, defendant argues that the trial court erred in failing to provide his requested special jury instruction defining abandoned property. "We review a trial court's refusal to give a requested jury instruction for legal error and view the record in the light most favorable to the requesting party." *State v. Paul*, 289 Or App 408, 409, 410 P3d 378 (2017). Abandoned property "is that of which the owner has relinquished all right, title, claim, and possession, with the intention of not reclaiming it or resuming its ownership, possession or enjoyment." *State v. Erickson*, 288 Or App 704, 710, 406 P3d 158 (2017) (internal quotation marks omitted). Here, although the workbench and rack had been left outside, a police officer testified that defendant said he knew he was on private property when he drove his pickup truck to the spot where he was loading the items, and he also told the officer that he did not ask for "permission from the owner to take the items," and that he "probably should have." Viewing the record in the light most favorable to defendant, the trial court did not err in denying the request for a special instruction defining abandoned property.

In arguing otherwise, defendant relies primarily on *Erickson*, 288 Or App at 710-11, but in *Erickson* the police were unable to determine who owned the property at issue and the state failed to meet its burden of showing it was the "property of another." Here, B was clearly the owner of the property, and even though he left it outside the machine shop, he testified he did not intend to get rid of it. The police officer's testimony established that defendant understood

the property had an owner. That evidence supported the trial court's decision to provide an instruction on the defense of an honest claim of right, ORS 164.035(1),[1] but it did not require a special instruction defining abandoned property.

Defendant's fourth, fifth, and sixth assignments of error focus on the trial court's use of the phrase "knowingly appropriated" in the jury instructions on theft. As relevant here, the trial court instructed the jury as follows:

"Oregon law provides that a person commits the crime of Theft in the First Degree when, with intent to appropriate property to himself, the person takes or appropriates such property from an owner thereof and the total value of the property is $1,000 or more.

"In this case, to establish the crime of Theft in the First Degree the State must prove, beyond a reasonable doubt, the following elements. (1) The act occurred on or about May 1st, 2021. (2) [Defendant] with the intent to appropriate property to himself, *knowingly appropriated* a steel workbench and a heavy duty steel storage rack from [the machine shop] and its owner, [B]. *** (3) [T]he total value of the property was $1,000 or more. And (4) [defendant] was criminally negligent with respect to his awareness that the value of the property was $1,000 or more.

"A theft occurs when a person takes or withholds property from the owner of the property with the intent to appropriate the property for that person's benefit or for the benefit of some other person.

"A person appropriates property of another to themselves if they exercise control over property of another permanently or for so extended a period of [time] under such circumstances as to acquire the major portion of the economic value or benefit of such property, or they dispose of the property of another for their benefit.

"A person acts intentionally or with intent when that person acts with a conscious objective to cause a particular result. When used in the phrase with intent to appropriate property with intent means that a person acted

[1]  It is a defense that a defendant acted under "an honest claim of right" if the defendant "was unaware that the property was that of another," or the defendant "reasonably believed that the defendant was entitled to the property involved or had a right to acquire or dispose of it as the defendant did." ORS 164.035(1).

with a conscious objective to appropriate their property to themselves.

> "A person acts knowingly or with knowledge if that person acts with an awareness that his or her conduct is of a particular nature. *When used in the phrase knowingly appropriated knowingly means that the person acted with an awareness that their conduct constituted Theft.* Knowledge is also established if a person acts intentionally."

(Emphasis added.) The court provided a similar instruction for the lesser-included offense:

> "The charged crime of Theft in the First Degree has a lesser included offense of the crime of Theft in the Second Degree. To establish the lesser included offense of Theft in the Second Degree the State must prove, beyond a reasonable doubt, each of the following four elements.

> "(1) The act occurred on or about May 1st, 2021. (2) [Defendant], with the intent to appropriate property to himself, *knowingly appropriated* a steel workbench and a heavy duty steel storage rack from [the machine shop] and its owner, [B]. (3) The total value of the property was $100 or more. And (4) [defendant] was criminally negligent with respect to his awareness that the value of the property was $100 or more."

(Emphasis added.) Assuming without deciding that the parties proposed jury instructions, which did not use the phrase "knowingly appropriated," were sufficient to preserve the arguments made on appeal, we conclude that the error if any was harmless.

An error is harmless if "there was little likelihood that the error affected the jury's verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In this case, the state was required to prove that defendant intended to appropriate the property to himself. ORS 164.015. Here, if the jury had *only* been instructed that it had to find that defendant *knowingly* appropriated the property, then the error might have been harmful because it could have led the jury to convict defendant based on a lesser mental state than required. But that is not what occurred. Instead, the jury was instructed a number of times that it had to find *both* that defendant had "the intent to appropriate property to himself," and that he

"knowingly appropriated" the property. Given that the jury had to make both findings due to the instructions that it received, then it could not have convicted defendant based on a lesser mental state than required.

Some of the other instructions that were given reinforce that conclusion. As noted above, the jury was instructed that "Knowledge is also established if a person acts intentionally." The jury was instructed that "knowingly appropriated" means that the person acted with an awareness that their conduct constituted theft, and that a theft occurs when a person takes property "with the intent to appropriate the property for that person's benefit." Because the jury was instructed several times that it had to find defendant intended to appropriate the property, the error, if any, in using the phrase "knowingly appropriated" was harmless. We therefore reject defendant's fourth, fifth and sixth assignments of error.

In his seventh assignment, defendant focuses on a comment during rebuttal closing argument. The prosecutor argued as follows:

> "We talk about the reasonableness and I just have to ask would a reasonable person drive onto private property, which the defendant already admitted to know that yes, this is private property, and take from said property?"

Defendant objected to the argument and the trial court overruled the objection.

We "review a trial court's decision to overrule an objection to closing arguments for abuse of discretion." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). Defendant argues that the prosecutor misapplied the standard for criminal negligence and relied on impermissible character-based reasoning. Considered in context, we conclude that the prosecutor's comments were not improper. As noted, defendant raised, and the trial court instructed, the jury as to the defense of "honest claim of right." Consequently, the state had the burden to prove that defendant did not have an honest claim of right to the property, so it was permissible for the prosecutor to argue that, given defendant's knowledge that he was on private

property, it was not reasonable for defendant to take the workbench and rack. That argument was based on the evidence, and, contrary to defendant's argument on appeal, it had nothing to do with his character. *See State v. Sperou*, 365 Or 121, 134-35, 442 P3d 581 (2019) (prosecutors may comment on the evidence and urge the jury to draw legitimate inferences from the evidence). The trial could did not abuse its discretion in overruling the objection. Because we reject each of defendant's assignments of error, we affirm the judgment of conviction.

Affirmed.